55 N.J. Super. 562 (1959)
151 A.2d 400
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT MINTER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1959.
Decided May 14, 1959.
*564 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Irving J. Verosloff, assigned counsel, argued the cause for appellant.
Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for respondent (Mr. David D. Furman, Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
On this appeal defendant, in effect, challenges the refusal of the County Court to declare invalid that portion of his sentence for carnal abuse in excess of five years.
*565 On September 23, 1953 defendant, then 19 years of age, committed carnal abuse on a 14-year-old girl. N.J.S. 2A:138-1 designates that offense a high misdemeanor, punishable by a fine not exceeding $5,000, or by imprisonment for not more than 15 years, or both. He was convicted and sentenced to the Bordentown Reformatory under the Indeterminate Sentence Act, N.J.S.A. 30:4-148, which provides:
"The courts in sentencing to the reformatory shall not fix or limit the duration of sentence, but the time which any such person shall serve in the reformatory or on parole shall not in any case exceed five years or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, if such maximum be less than five years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than five years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. * * *"
The Essex County Probation Department prepared an unusually detailed presentence investigation report for the use of the County Court before the imposition of sentence. The report stated that defendant was "an aggressive and emotionally unstable constitutional defective." It observed that although this was defendant's first conviction as an adult offender, he had been in "a load of difficulty as a juvenile," and the school authorities as well as the law enforcement authorities had had difficulty with him since 1946 when he was 12 years old. "There was a repetitive pattern of aggressive, incorrigible behavior from then on. * * * He is just a maladjusted constitutional defective who has also been classified as a `pathological liar.'"
Upon receipt of the probation office report the court referred defendant to the New Jersey Diagnostic Center at Menlo Park for further examination. That institution reported that
"This patient, who is of a borderline mental-defective intelligence, appears to be a somewhat violent type of person who in his poor controls could well become dangerous. Diagnostically he appears to *566 be a severe personality disturbance, an antisocial, aggressive reaction type. Considering his poor mentality and the severity of his personality disturbance, we do not feel that he would be amenable of any form of psychiatric treatment either in an institution or without. Therefore would recommend that he be treated as a straight correctional case."
Consistent with the requirement of R.R. 3:7-10(b), the sentencing judge (County Court Judge Conlon, now deceased) made a brief statement of the basic reasons for the sentence, observing that the case was a "nasty" one, involving the forceful rape of a 14-year-old girl; that defendant had only recently been paroled from Bordentown Reformatory; and were it not for the fact that defendant was only 19 years old, he would commit him to the State Prison. Under the circumstances, said the judge, the sentence would be to Bordentown Reformatory "with the provision that the five-year maximum will not apply." The latter reference was unquestionably to N.J.S.A. 30:4-148.
In bringing his declaratory judgment action by assigned counsel, defendant demanded judgment that the court declare the provision in the sentence with respect to the non-applicability of the statutory five-year maximum term null and void because of failure to meet the requirements of N.J.S.A. 30:4-148, and that the maximum term to be served was five years. The matter was heard by Judge Gaulkin, then sitting in the Essex County Court, who concluded that the sentencing judge was obliged to state the number of years constituting the maximum sentence, and therefore so much of the sentence as provided that the five-year maximum would not apply was incomplete and unenforceable. He thereupon directed that defendant be brought before the court for correction of sentence.
At the resentence Judge Gaulkin had before him the presentence investigation and Diagnostic Center report that had been available to Judge Conlon, and made extensive reference to them. Judge Gaulkin had also arranged to have the presentence investigation brought up to date, so that he would *567 have a history of defendant while in custody. He considered this subsequent record, but expressly stated that he was doing so only for the purpose of finding if there was anything that would be helpful to defendant, and not to aggravate his situation in any degree. Judge Gaulkin concluded that what Judge Conlon undoubtedly had in mind at the time of the original sentence was that the five-year maximum was not to apply, but rather the 15-year maximum for carnal abuse; that in sending defendant to the Bordentown Reformatory Judge Conlon obviously had intended that the prisoner be kept under supervision for as long a period as was necessary, with possible release on parole thereafter. After reviewing defendant's entire record and history, Judge Gaulkin stated that he could find nothing to persuade him that the maximum be less than 15 years. He accordingly set aside the previous sentence and resentenced defendant to the Bordentown Reformatory, stating that the five-year maximum fixed by the statute should not apply, but that the maximum should be that fixed by N.J.S. 2A:138-1  15 years.
Defendant's first point is that Judge Gaulkin had no power to impose a new sentence beyond the five-year statutory maximum. He argues that by reason of Judge Conlon's failing to fix a maximum sentence and not showing "good cause," all of the sentence in excess of five years was invalid and there remained a valid sentence of five years, the maximum period fixed for an indeterminate term under N.J.S.A. 30:4-148. This attempt to divide the original sentence into two parts, one valid and the other invalid, smacks of the metaphysical. Judge Conlon imposed but one sentence, and because he failed to impose a maximum term as required by N.J.S.A. 30:4-148, the sentence was improper. It was completely inoperative. Cf. State v. Weeks, 6 N.J. Super. 395, 400 (App. Div. 1950), which quoted with approval from Kitt v. United States, 138 F.2d 842 (4 Cir. 1943):
*568 "* * * Kitt cannot validly contend that the original sentence must be set aside to permit a resentence, while at the same time those provisions of the original sentence providing for concurrent, rather than consecutive, terms of imprisonment must be kept alive for his protection."
The Indeterminate Sentence Act had its origin in L. 1901, c. 104, relating to the New Jersey Reformatory at Rahway, predecessor of the Bordentown Reformatory and established in 1895. Section 9 of that statute provided that courts, in sentencing to the reformatory, "shall not fix or limit the duration of sentence, but it shall not in any case exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, and may be terminated by the managers of the reformatory as herein provided." A similar provision was included in section 14 of L. 1910, c. 72, relating to the State Reformatory for Women. This language was carried forward into section 317 of L. 1918, c. 147, relating to charitable, correctional, reformatory and penal institutions, boards and commissions, and then into R.S. 30:4-148. It remained without change until the amendment of L. 1951, c. 335, § 1, which for the first time introduced a maximum period of detention and parole of five years. However, the court could, for good cause shown, impose a sentence greater than five years but in no case greater than the maximum provided by law, "and the commitment shall specify in every case the maximum of the sentence so imposed."
The State urges that Judge Conlon's failure to specify a maximum was not fatal; that, consistent with the practice existing in the County Courts of this State for over half a century, the sentencing judge clearly intended a maximum sentence not less than the statutory maximum, and therefore the 15-year maximum of N.J.S. 2A:138-1 should apply, subject only to the authority of the Bordentown Reformatory Board of Managers to parole defendant at an earlier date if rehabilitation was evident. We cannot agree. The *569 language of N.J.S.A. 30:4-148 could not be clearer. In every case of indeterminate sentence to a reformatory the commitment must specify the maximum of the sentence imposed. We hold that the original sentence was illegal for failure to specify such maximum.
Anticipating the possibility of such a conclusion, the State alternatively argues the applicability of R.R. 3:7-13 which provides that "The court may correct an illegal sentence at any time." This language is identical with the first sentence of Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., although we have not adopted the language of the remainder of that rule. Cf. State v. Kowalczyk, 3 N.J. 231, 234 (1949). As we noted in State v. Weeks, above, 6 N.J. Super., at page 398, R.R. 3:7-13 represents a departure from our former practice (In re Janiec, 137 N.J.L. 94, 95 (Sup. Ct. 1948), certiorari denied 336 U.S. 939, 69 S.Ct. 742, 93 L.Ed. 1098 (1949); and see the discussion in State v. Culver, 23 N.J. 495, 500 et seq. (1957)), and affords a defendant liberal opportunity to apply for correction of a sentence disclosed by the records to be illegal. For the purposes of R.R. 3:17-13 the illegality referred to is "one disclosed by the record, such as a sentence in excess of the statutory provision, or in some other way contrary to the applicable statute." McIntosh v. Pescor, 175 F.2d 95, 97 (6 Cir. 1949), quoted in In re Gladstone, 12 N.J. Super. 589, 593 (Cty. Ct. 1951). The situation here is one where the original sentence was, in its entirety, "contrary to the applicable statute."
The rule was considered in State v. Culver, above, where the prosecutor moved to correct illegal sentences and defendant objected, claiming he should be released. Our Supreme Court held that the trial court had full power to resentence defendant even after his original sentence had been partially executed. Chief Justice Vanderbilt in that case observed (23 N.J. at page 504) that "the power to punish criminal offenders granted to the County Court by N.J.S. 2A:3-4 would seem naturally to include the power *570 to correct the sentences imposed by it * * *." R.R. 3:7-13 clearly underlines that power.
Defendant claims that the County Court, on resentence, was without sufficient information to "extend" the term of imprisonment  meaning thereby the five-year maximum term for which defendant contends. The very opposite is the fact. Judge Gaulkin was not obliged to sit in the trial, hear the testimony and observe the witnesses, as defendant obliquely suggests. Defendant had been found guilty; all that remained was to sentence him. The resentencing judge, as noted, had before him the detailed probation office report as well as the report of the Diagnostic Center, originally obtained by Judge Conlon pursuant to R.R. 3:7-10(b). Additionally, he had obtained an investigation report supplementing the previous reports, for the purpose of ascertaining whether it developed facts or circumstances which would indicate that a sentence different from the original one should be imposed. See State v. Culver, above, 23 N.J., at page 511. Judge Gaulkin was therefore fully informed as to every factor that might possibly have pertinence at the resentence.
As a second main point on appeal defendant claims the resentence was invalid because "good cause" was not shown for exceeding the normal five-year limitation. The several reports and defendant's record fully established "good cause," as demonstrated by even our brief reference to and quotations from them earlier in this opinion. The statute does not direct that the trial court specifically list the reasons which impelled it, in its discretion, to impose the type of sentence defendant received. It does not appear that there is any obligation to show "good cause" to the prisoner; the statute contemplates that the trial judge is free to impose a greater sentence when good cause is shown to him, presumably by presentence investigation reports. However, we consider it good practice for the sentencing judge to state with reasonable brevity why he is imposing an indeterminate sentence greater than five years, not only for the information of the *571 defendant who appears before him, but also for our information in case of appeal. (We recognize that the latter is also covered by the provision of R.R. 3:7-10(b), which directs that as part of the presentence report and before the submission thereof to the institution to which the offender is committed, the sentencing judge "shall include therein a brief statement of the basic reasons for the sentence so imposed by him.") That practice was followed here. Before imposing sentence Judge Conlon briefly, and Judge Gaulkin quite extensively, discussed defendant's record and background, thereby reflecting the good cause they found in the reports before them for exceeding the five-year period.
Defendant's argument that Judge Gaulkin imposed a sentence in excess of the statutory limit is without factual basis. Having been convicted of carnal abuse, defendant is now subject to an indeterminate sentence with a maximum not to exceed 15 years, as provided in N.J.S. 2A:138-1. The cases he relies on are not apposite, for they deal with situations where the sentence was clearly beyond the statutory limit.
The action taken by Judge Gaulkin and the sentence he imposed are affirmed.