69 N.J. Super. 230 (1961)
174 A.2d 204
IN THE MATTER OF THE APPLICATION OF NEW JERSEY REFORMATORY AT BORDENTOWN FOR CORRECTION OF ILLEGAL SENTENCE IMPOSED UPON JOHN T. NICHOLSON.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1961.
Decided October 5, 1961.
Before Judges GOLDMANN, FOLEY and LEWIS.
*231 Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for appellant State of New Jersey (Mr. David D. Furman, Attorney General, attorney; Mr. Urbaniak, on the brief).
Mr. Ira Rabkin argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
John T. Nicholson was convicted in the Camden County Court for the crime of conspiracy, in violation of N.J.S. 2A:98-1. On January 28, 1960 he was sentenced to serve an indeterminate term in the New Jersey Reformatory at Bordentown. See N.J.S.A. 30:4-148.
N.J.S. 2A:98-1 provides that the crime of conspiracy shall be punished as a misdemeanor unless the conspiracy involved the possession, sale or use of narcotic drugs, in which case the crime is denoted a high misdemeanor. There is no indication that narcotics were involved in Nicholson's offense, and we must therefore assume that he was convicted of a misdemeanor. N.J.S. 2A:85-7 provides that the punishment for any person found guilty of a misdemeanor shall be a fine of not more than $1,000 or imprisonment for not more than three years, or both. It thus appears that the maximum sentence for Nicholson's offense was three years. Despite the language of N.J.S.A. 30:4-148, quoted below, the County Court judge specified in his order of commitment that the maximum of Nicholson's sentence should not exceed 18 months.
The Attorney General then applied for correction of illegal sentence pursuant to R.R. 3:7-13, contending that the court should have imposed an institutional sentence without minimum and without specifying a maximum less than that provided by N.J.S. 2A:98-1 and 2A:85-7, namely, three years. The County Court judge appointed present counsel, Ira Rabkin, Esquire, to represent Nicholson. In order to explore fully the programs of reformatory type institutions *232 as well as the policies dictating those programs, the sentencing judge took the testimony of Dr. Lloyd W. McCorkle, Director of the Division of Correction and Parole in the Department of Institutions and Agencies, accepted as an expert in penology and criminology. At the close of that testimony the court refused to correct the alleged illegal sentence. This appeal followed.
The sole question before us is whether a sentencing court, in committing to a reformatory pursuant to N.J.S.A. 30:4-148, may, in the circumstances here present, set a maximum period of detention less than the maximum prescribed by statute. N.J.S.A. 30:4-148 reads:
"The courts in sentencing to the reformatory shall not fix or limit the duration of sentence, but the time which any such person shall serve in the reformatory or on parole shall not in any case exceed five years or the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, if such maximum be less than five years; provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than five years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed. The term may be terminated by the board of managers in accordance with its rules and regulations formally adopted." (Italics ours)
The provisions governing commitments to the Annandale Reformatory and the New Jersey State Reformatory for Women are to like effect, the italicized text having been added to all three statutes by L. 1951, c. 335. See N.J.S.A. 30:4-152 and 30:4-155.
The predecessor of the Bordentown Reformatory, the New Jersey Reformatory at Rahway, was established in 1895. L. 1895, c. 357. From the outset provision was made for indeterminate type sentences at Rahway. Section 9 of L. 1901, c. 104, "An Act relating to the management of the New Jersey Reformatory," directed that
"The courts in sentencing to the reformatory shall not fix or limit the duration of sentence, and it shall not in any case exceed *233 the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, and may be terminated by the managers of the reformatory as herein provided."
Similar provision was made for commitments to the State Reformatory for Women by L. 1910, c. 72, § 14. This language was preserved in the revision of statutes pertaining to the Rahway Reformatory and the Women's Reformatory by L. 1918, c. 147, §§ 312 and 317. Annandale sentences were similarly limited by the enactment of L. 1929, c. 101, § 3, a supplement to the 1918 act. The several statutory provisions were carried forward into the Revised Statutes, R.S. 30:4-148, 152 and 155, and remained so until the amendment effected by the 1951 statute, c. 335, reflected in the italicized part of the quotation of N.J.S.A. 30:4-148, above. The effect of the 1951 amendments was that the Legislature for the first time fixed a maximum period of detention and parole of five years for high misdemeanors. However, by way of proviso the Legislature authorized the sentencing court, "in its discretion, for good cause shown," to impose a sentence of more than five years, but in no case greater than the maximum provided by law, and if it did, the commitment was to specify "in every case the maximum of the sentence so imposed."
Initially, it must be noted that the attributes of an indeterminate sentence are completely different from those which inhere in a sentence prescribing a minimum-maximum term. In the case of an indeterminate sentence, the offender is sentenced to institutional type confinement and is eligible for parole immediately. There is no minimum limitation placed upon him; the authority to release him is lodged in the board of managers of the institution under R.S. 30:4-106. See In re Legdon, 13 N.J. Super. 405 (Cty. Ct. 1951). In the case of a minimum-maximum term, the inmate is not eligible for parole until certain percentage portions of his sentence have been served. These vary, depending upon whether the inmate is a first offender or a recidivist. See N.J.S.A. 30:4-123.10 to 123.12.
*234 In fixing an 18-month maximum commitment to the Bordentown Reformatory for Nicholson, the County Court judge referred to certain reports of a former committee of county judges appointed by the Supreme Court. He noted that the 1949 report concerned itself with the trend of legislative enactments which, it was said, took away from the criminal courts almost all discretion in the imposition of sentence, placing that discretion in the hands of the boards of managers of the several penal and reformatory institutions of the State, or the new Parole Board. The report had disapproved this trend because, according to the trial judge, "the responsibility for sentencing has become so divided between the courts, the institutional boards and the Parole Board that the responsibility lies nowhere and, therefore, there exists the present confusion." We find no factual support for this conclusion and disagree with it. The report had recommended that the primary responsibility for sentences be restored to the trial courts. The county judge committee's 1950 report, according to the trial judge, contained recommendations generally designed to restore to the courts more latitude in the imposition of sentences, to the end of establishing greater uniformity. It is to be observed that despite the committee's views, the Legislature, in amending N.J.S.A. 30:4-148, limited itself to adding the text italicized in the quotation above.
The trial judge held that sentencing relates to procedure, citing In re Hardman, 131 N.J.L. 257, 258 (Sup. Ct. 1944), and quoted R.R. 3:7-10(d), dealing with the imposition of sentence. We find nothing in the rules which in any way controverts the legislative directive found in N.J.S.A. 30:4-148 or diminishes its effect. The trial judge also placed emphasis upon the disparity which might develop between a sentence given a hardened criminal committed to the State Prison for a minimum-maximum term and the sentence given a youthful offender, guilty of the same crime, committed to the reformatory on an institutional sentence carrying merely the maximum statutory term. He cited, by *235 way of example, that in the case of a penalty with a three-year maximum, the hardened criminal might be released from the State Prison in about eight months, while the Bordentown Reformatory inmate would be released in approximately 11 and an Annandale inmate in about 15  this on the basis of Dr. McCorkle's testimony. The judge said that courts "should not be placed in a position of having to explain these situations, but this is not an uncommon practice." He concluded, "There is nothing in the act as the court views it that impels or prohibits the court from giving the maximum sentence to an institution * * *." We hold that in so determining the trial judge misread the act and did not fully grasp the significance of an indeterminate or institutional-type sentence to a reformatory.
First, as to the statute. The language of N.J.S.A. 30:4-148 is clear. Sentencing courts have uniformly followed it through the years. Both before and after 1951 they have not, until this case, attempted in similar situations to set a maximum less than the statutory limit.
Both briefs refer to our opinion in State v. Minter, 55 N.J. Super. 562, 569 (1959), where we said, "In every case of indeterminate sentence to the reformatory the commitment must specify the maximum sentence imposed." (Italics ours) Minter dealt with a situation where the defendant had been convicted in the County Court for carnal abuse. The sentencing judge, after reviewing the exhaustive presentence investigation report and the report of the New Jersey Diagnostic Center at Menlo Park, held that the five-year maximum of N.J.S.A. 30:4-148 was not to apply. On resentence, the successor County Court judge concluded that the unquestioned intention of the sentencing judge was that the statutory maximum of 15 years in carnal abuse cases was to apply.
Both parties agree that in Minter the appellate court was dealing only with a case in which the sentencing judge chose to impose more than the five-year maximum. In order that our holding in Minter be clearly understood, it must be *236 remembered that we were concerned only with a situation covered by the proviso of N.J.S.A. 30:4-148, that is, one where the statutory maximum exceeds five years and the court, after specifically stating that the five-year maximum is not to apply, imposes a sentence greater than five years but not greater than the maximum provided by law, and so specifies in the order of commitment. Obviously, our words, "in every case," were meant to be read in the context of the particular situation with which we were dealing and those falling within the same factual category.
Assigned counsel urges that a "proper dissection" of N.J.S.A. 30:4-148 supports the sentence imposed by the trial judge. He argues that the first clause, "The courts in sentencing to the reformatory shall not fix or limit the duration of sentence," and the last clause, "and the commitment shall specify in every case the maximum of the sentence so imposed," belong to and follow upon each other, "quite naturally and grammatically." We disagree, because such a "dissection" would eliminate all of the language between, and in particular the proviso. A semicolon, and the words "provided, however," separate language which had been on the statute books since 1901, from the language added in 1951. Counsel's reconstruction of the statutory language not only perverts the obvious legislative purpose, but runs counter to the consistent application of the statute by sentencing courts through the years. It also fails to take into consideration the function of a proviso. It has been said that
"As in all other cases, a proviso should be interpreted consistently with the legislative intent. Where the proviso itself must be considered in an attempt to determine the intent of the legislature, it should be strictly construed. This is true because the legislative purpose set forth in the general enactment expresses the legislative policy and only those subjects expressly exempted by the proviso should be freed from the operation of the statute. * * *" 2 Sutherland, Statutory Construction (3d ed. 1943), § 4933, p. 471.
The last clause in the proviso of N.J.S.A. 30:4-148  "and the commitment shall specify in every case the maximum *237 of the sentence so imposed"  is a directive concerned only with the proviso itself and should be construed only in its relation to the language of that proviso in which it appears. Grammatical construction compels this interpretation, as does the spirit of the statute and the rules of statutory construction. The first part of the first sentence expresses the legislative policy, namely, that courts must not fix or limit the duration of a sentence to the Bordentown Reformatory. The proviso restricts the general operating section of the statute, but only when the trial court chooses to exceed the five-year maximum where the penalty fixed for the crime is more than five years. Only in such a case does the requirement that the commitment specify the maximum so imposed, operate.
The State convincingly argues that the imposition of an indeterminate reformatory sentence having a maximum of short duration, such as was imposed here, defeats the entire theory of the reformatory-type sentence. It points out that the Legislature has vested in the board of managers of each reformatory the authority to parole at any time that it deems parole to be indicated, and this in its sole discretion. R.S. 30:4-106. That may occur the day following commitment, or parole may be withheld until the expiration of the maximum. Since persons admitted to reformatories are mainly in the first offender category and not yet regarded as State Prison material, there is sound basis for this legislative determination. The theory underlying reformatory confinement is one where the program is implemented to the highest degree by efforts at rehabilitation. The legislative formula for the imposition of the institutional-type sentence has correctly been described as accentuating "the theory of training and social rehabilitation, with termination of service dependent, inter alia, upon its accomplishment, over and above the more normal incidents of imprisonment which are implicit in sentences to the State Prison. It is, thus, apparent that the State conceives of importance the role of this reformatory, primarily as a rehabilitative and corrective *238 institution, * * *." In re Zienowicz, 12 N.J. Super. 563, 571-2 (Cty. Ct. 1951).
The testimony of Dr. McCorkle points up the guiding policy and program involved in reformatory sentences. In effect, he testified that the key to a successful reformatory program is the invoking of the rehabilitative process; that this process requires a series of investigations and studies of the individual in order to attempt to correct his attitudes and give him an opportunity to make a positive contribution to society; and the correct application of this process requires that the individual remain under the guidance of the State for a sufficient period so that there will be an opportunity to utilize the information afforded by the investigations and studies conducted by the professional staff of the institution.
The Attorney General makes the valid point that if the sentencing judge has the authority to impose an 18-month sentence, he also has the power to impose a sentence of lesser duration  for example, one for as little as a month. As was indicated by Dr. McCorkle, the detrimental result of the exercise of such power would be to thwart the whole program of rehabilitation and render it meaningless, since the entire process would have insufficient time in which to achieve its objectives. Additionally, the inmate, knowing he is to be confined for only a short period, might not avail himself of the opportunity to rehabilitate himself by full use of the materials and program made available to him.
The broad grant of power given the reformatory board of managers to terminate the period of commitment of an inmate  a power consistent with the first clause of N.J.S.A. 30:4-148  would be rendered ineffective if the sentencing judge had the power to fix a maximum term less than that established by the statute in this case. There would be nothing to prohibit him from imposing a sentence less than that truly required to give full play to the rehabilitative processes of the institution.
*239 The trial judge expressed the opinion that the rule providing for a presentence report implies an intention to increase the court's discretion in the field of sentencing. We consider one of the principal purposes of such a report to be that of providing the sentencing judge with information concerning the offender, in order that he may determine whether penal custody is required and, if so, for how long (within the statutory limits) and in what institution. State v. Benes, 16 N.J. 389, 395 (1954).
The order of conviction is reversed and the matter remanded for the imposition of a proper sentence under N.J.S.A. 30:4-148.