92 N.J. Super. 356 (1966)
223 A.2d 502
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RUSSELL FORD, ALIAS RUSSELL HICKS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1966.
Decided October 27, 1966.
*358 Before Judges GOLDMANN, KILKENNY and LEWIS.
Mr. Alan L. Wohl, assigned counsel, argued the cause for appellant.
Mr. Raymond R. Trombadore, Deputy Attorney General, argued the cause for respondent (Mr. Michael R. Imbriani, Deputy Attorney General in Charge, Somerset County Prosecutor's Office, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
On this appeal defendant challenges the validity of resentences imposed for armed robberies.
On November 17, 1952 defendant, represented by assigned counsel, pleaded non vult in the Somerset County Court to five indictments, each of which charged him with armed robbery, in violation of N.J.S. 2A:141-1 and 2A:151-5. He also pleaded non vult on November 25, 1952 to an accusation filed pursuant to N.J.S. 2A:85-13, charging him with being an "habitual criminal," by reason of his new conviction under *359 the five indictments consolidated for trial and prior convictions of high misdemeanors of the requisite number. On December 9, 1952 a sentence of life imprisonment, made mandatory under N.J.S. 2A:85-12, was imposed. No separate sentences were imposed for the five 1952 charges of armed robbery.
On January 6, 1965, more than 12 years later, and while confined in State Prison under his life sentence, defendant succeeded in having two of his prior high misdemeanor convictions, entered in 1938 on non vult pleas, set aside by a judge in the Union County Court, upon the ground that he had not been represented by an attorney at the time of those convictions in Union County. The validity of that ruling is not presently before us. However, its effect was to knock out the underpinning upon which his life sentence as an habitual offender was based.
In 1965 defendant petitioned the Somerset County Court, pursuant to the post-conviction procedure, R.R. 3:10A, to set aside his life sentence as an habitual criminal, relying upon the vacation of the two high misdemeanor convictions by the Union County Court. The validity of his claim was recognized and the life sentence vacated. Thereupon, the Somerset County Court resentenced defendant on September 17, 1965, imposing a term of five to seven years in State Prison for each of the robberies charged in the five 1952 indictments and an additional one to two years for committing the robberies while "armed," N.J.S. 2A:151-5. The sentences for being armed were made concurrent with the respective sentences for the robberies, but the five robbery sentences were made to run consecutively. The net result of the resentence was to substitute for the single sentence of life imprisonment five consecutive sentences which added up to 25 to 35 years.

I.
Defendant argues that the resentencing court was in error in imposing five consecutive sentences on the five indictments *360 in the light of the earlier proceedings and the original trial court's sentence. He reasons that the trial court originally intended only a single sentence on the five charges, or at least only concurrent sentences, because the five indictments stemmed from a single felonious act committed at the same time and place, and under the same circumstances, even though there were several victims of this common armed robbery.
Defendant, admittedly, entered premises occupied by Seaboard Finance Company in the Borough of Bound Brook, Somerset County, on July 25, 1952 and then and there, while armed with a loaded pistol, forcibly and by putting in fear took (1) from Edward Boyle, $550.25, the property of Seaboard Finance Company; (2) from Malcolm Jorgensen, $31; (3) from Edward Boyle, the same person mentioned in (1) supra, a wristwatch of the value of $60; (4) from Dorothy Poklitar, a diamond ring of the value of $329.40, and (5) from Marjorie Parnell, $238.
The original 1952 life sentence lost all vitality when defendant was successful in causing its vacation in his post-conviction proceeding under R.R. 3:10A. That rule required a correction of the invalid sentence. R.R. 3:10A-12. We may not speculate what the original sentencing judge might have done if the mandatory life sentence had not been imposed. When that sentence fell, the duty of the resentencing judge was to sentence defendant anew. State v. Minter, 55 N.J. Super. 562 (App. Div. 1959). Any "attempt to divide the original sentence into two parts, one valid and the other invalid, smacks of the metaphysical." Id., at p. 567. The original sentence having become improper in the light of subsequent events, it was completely inoperative. State v. Culver, 23 N.J. 495 (1957); N.J.S. 2A:3-4.

II.
Defendant's next contention is that the resentencing court palpably abused its discretion when it imposed consecutive *361 sentences upon defendant, which aggregated 25 to 35 years. Defendant stresses that all of the indictments stemmed from one hold-up or armed robbery, albeit property was taken from four individuals in the course thereof. Moreover, note is made of the fact that no physical injuries were sustained.
Defendant concedes that discretion is vested in the sentencing judge as to the quantum of the sentence and that the sentences herein are within the statutory limits. However, he points out quite properly that an appellate court has a right to revise a sentence where it is manifestly excessive, even though within the statutory limits. State v. Johnson, 67 N.J. Super. 414, 424-425 (App. Div. 1961).
"The philosophical justification for `punishment' has divided men for centuries. Suggested bases or aims are (1) retribution, (2) deterrence of others, (3) rehabilitation of the defendant, and (4) protection of the public by isolation of the offender." State v. Ivan, 33 N.J. 197, 199 (1960). "Expressed in other terms, the prevailing theme is that punishment should fit the offender as well as the offense." Id., at p. 200.
Defendant herein has a bad record as a violator of the law, extending back to at least 1938. In fact, when he completes his prison term in New Jersey, he faces a detainer filed by the State of Connecticut to finish nine years of a ten-year prison term there and, perhaps, additional time for escaping from the Connecticut prison. Moreover, the so-called single hold-up herein was of the aggravated type, involving as it did four individuals. The theft from each victim constituted a separate robbery. State v. Hoag, 21 N.J. 496 (1956), affirmed 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958). Fortunately, no one was shot during the hold-up, but the loaded pistol in defendant's hand carried with it the possibility of serious bodily harm, or even death to one or more of the victims.
Except as hereinafter modified for the reason stated, we find no demonstration by defendant of any abuse of discretion such as would warrant our intervention in the sentences *362 imposed. State v. Gibbs, 79 N.J. Super. 315, 325 (App. Div. 1963). Cf. State v. Gentile, 41 N.J. 58 (1963); State v. Tyson, 43 N.J. 411, 417 (1964).

III.
As noted above, four individuals were robbed by defendant, but five indictments for robbery were returned against him. As to the victim Boyle, two separate indictments were voted because defendant took Boyle's personal wristwatch and also some $550.25 in cash in Boyle's custody and possession, the property of Seaboard Finance Company. On these two indictments, numbered 6724 and 6724B defendant received two consecutive 5-7-year prison terms.
The propriety of the double indictment and double penalty in the case of victim Boyle was not raised in the County Court. Assigned counsel on this appeal recognizes that fact, but urges us to consider it, nevertheless, to avoid further proceedings. The issue involves an important question in criminal law and we shall undertake to answer it.
May a robber be subject to double and even multiple convictions and punishments if the robbery is committed at the same time and place, under the same circumstances, and there is taken from the same victim his own money or property and the money or property in his possession belonging to another or to others? We know that in a hold-up of two or more persons at the same time and place, the robber may be separately indicted and tried for each victim of the robbery. State v. Hoag, supra. But suppose there is a single victim put in fear at the same time and place, and the robber takes that victim's own personalty as well as money or property in his possession belonging to another  is one robbery committed, or two? Or, to take an extreme example, if a pawnbroker is held up in his office and the robber takes 100 pledged items, does he commit 100 robberies and become subject to 100 penalties therefor?
We reach the conclusion that a robber, who takes from the possession of the same victim, at the same time and *363 place, cash or personalty owned by more than one person, commits a single robbery as to that particular victim.
Robbery was defined at common law as "the felonious taking of personal property from the person or custody of another by force or intimidation." State v. Butler, 27 N.J. 560, 589 (1958). The phrase "from the person * * * of another" has been broadly construed to include the taking of personalty "from the custody of, or from the constructive possession of, or which is subject to the protection of, another." Id., at p. 589. Our statute, N.J.S. 2A:141-1, defines robbery as follows:
"Any person who forcibly takes from the person of another, money or personal goods and chattels, of any value whatever, by violence or putting him in fear, is guilty of a high misdemeanor * * *." (Italics ours)
The robbery statute makes no specific reference to the element of ownership of the money or goods taken by the robber. It is enough that the cash or personalty belongs to someone other than the thief. State v. Cottone, 52 N.J. Super. 316, 323 (App. Div. 1958). In brief, ownership of the property is generally immaterial, because robbery, like larceny, is an offense against possession, rather than ownership of the property. State v. Bowden, 62 N.J. Super. 339 (App. Div. 1960), certification denied State v. Duffy, 33 N.J. 385 (1960); Levin v. United States, 119 U.S. App. D.C. 156, 338 F.2d 265 (1964), certiorari denied 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965); State of Hawaii v. Pokini, 367 P.2d 499 (Hawaii Sup. Ct. 1961); Hall v. State, 160 Tex. Cr. R. 553, 272 S.W.2d 896 (Crim. App. 1954). The violence or putting in fear was practiced on only one person here, Boyle.
The cash of Seaboard Finance Company was under the care and in possession of the victim Boyle, as was Boyle's own watch, when Boyle was put in fear, and these items of personal property were contemporaneously taken from him. That act constituted a single robbery of Boyle, despite the diverse *364 ownership. Defendant should not have received two consecutive prison terms for that robbery of Boyle. The essence of the crime is not that the property belonged to a specific person but rather that it was the property of someone other than the thief. Cf. State v. Trunfio, 58 N.J. Super. 445, 448 (App. Div. 1959); 77 C.J.S. Robbery § 38, p. 475.
The judgments are affirmed, except that there will be eliminated one of the two penalties imposed for the crimes charged in indictments numbered 6724 and 6724B. Although defendant pleaded non vult to both of these indictments, as well as to the other three, these indictments involving Boyle will be deemed to have charged a single robbery, punishable as such. The four sentences now remaining will, of course, run consecutively.