84 N.J. Super. 173 (1964)
201 A.2d 384
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES E. THOMPSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1964.
Decided June 5, 1964.
*174 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Richard S. Miller argued the cause for appellant (Mr. Walter E. Williams, assigned counsel, attorney; Mr. Miller on the brief).
Mr. Archibald Kreiger, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an indigent defendant's appeal from County Court judgments of conviction, entered after a jury verdict of guilty, for the crimes of breaking and entering with intent to commit rape (N.J.S. 2A:94-1  indictment No. 148-62) and rape (N.J.S. 2A:138-1  indictment No. 149-62).
The Passaic County grand jury returned five indictments against defendant. Indictment Nos. 146-62 and 150-62 do not concern us, for they were dismissed on motion of the *175 prosecutor. Indictment No. 147-62 charged defendant with assault with intent to commit rape on one L, in Paterson, N.J., on March 25, 1962. Indictment No. 148-62 charged him with breaking and entering with intent to commit rape on H, in Paterson on August 31, 1962. Finally, indictment No. 149-62 charged defendant with raping H on the latter occasion. Defendant pleaded not guilty to all three indictments and stood trial on the latter two. The jury found him guilty.
Pursuant to N.J.S. 2A:164-3 (section 1 of the Sex Offender Act, L. 1950, c. 207, as amended; N.J.S. 2A:164-3 et seq.) the county judge then referred him to the Menlo Park Diagnostic Center for examination. The Center rendered its report on January 3, 1963, stating that defendant's case fell within the purview of N.J.S. 2A:164-5 and recommending that he be committed to an institution, namely, Greystone Park. See N.J.S. 2A:164-6(b).
Defendant having retracted his not guilty plea to indictment No. 147-62 and entered a plea of guilty, the county judge again referred him to the Diagnostic Center which, in its January 15, 1963 report, found that this case also came within N.J.S. 2A:164-5 and recommended that defendant be committed to Greystone Park.
Defendant appeared for sentence on January 18, 1963. The two Diagnostic Center reports had been made available to defense counsel, who had discussed them with defendant and found them accurate. The trial judge, although stating that he was fully cognizant of the provisions of the Sex Offender Act and the two reports, imposed the following sentences: on indictment No. 147-62, a State Prison term of 10-12 years and a $1,000 fine; on indictment No. 148-62, a State Prison term of 5-7 years to run consecutively to the 147-62 sentence; and on indictment No. 149-62, a further State Prison term of 7-10 years to run consecutively to those imposed on Nos. 147-62 and 148-62.
Defendant's appeal challenges the propriety of the convictions on four grounds: (1) the prosecutor's reference on *176 summation to defendant's prior criminal record was prejudicial and constituted plain error; (2) the trial court committed error in admitting defendant's confession into evidence; (3) it erred in failing to grant defendant's motion for judgment of acquittal at the close of the State's case; and (4) the trial judge completely ignored the recommendations of the Diagnostic Center. The first point is raised by assigned counsel; the remaining three have been presented by him at defendant's specific request and direction.
[The court here found the first three grounds without merit.]
We come, then, to defendant's final argument that the trial court ignored the Diagnostic Center recommendations in imposing the consecutive State Prison sentences. We agree.
Defendant's criminal record is characterized by a pattern of repetitive, compulsive behavior. See N.J.S. 2A:164-5. The Diagnostic Center's report after defendant's first examination was that "In the sexual area he seems preoccupied and he does not seem able to control his urges and impulses when stimulated in that direction." The Center evaluated defendant as "the product of an extremely impoverished home, which had predatory effects upon him. He elicits many schizoid (schizophrenic-like) features. We consider him as functioning at present in a pre-schizophrenic level." The medical staff considered him as coming under the Sex Offender Act and recommended institutionalization at Greystone Park.
The second examination at the Diagnostic Center resulted in a report that defendant's conflicts in the sexual area seem very severe. "In fact, the anxiety generated seems so intense and overwhelming that it gave every indication of impulsive and aggressive acting out. He also seems to have doubts about his masculine adequacy and he tries to over-compensate for these doubts in a violent and sexually aggressive manner." Further, the medical staff found a tendency to withdrawal, a confusion in defendant's thinking, and a serious state of turmoil in the psychosexual area, which engendered periodical outbursts of violent aggression with sexual overtones. The *177 evaluation and recommendation was that defendant had embarked upon "a repetitive pattern of erratic sexual behavior" which placed him under the purview of the Sex Offender Act and required treatment in a mental hospital.
N.J.S. 2A:164-5 (section 3 of the Sex Offender Act, as amended) provides that if it shall appear from the Diagnostic Center report that a defendant's conduct is characterized by a pattern of repetitive compulsive behavior and, except in cases of open lewdness or indecent exposure, violence was resorted to in committing the offense, "it shall be the duty of the court, upon recommendation of the Diagnostic Center, to submit the offender to a program of specialized treatments for his mental and physical aberrations." (Italics ours) The statutory language is mandatory: it is the duty of the trial judge, upon receipt of the Diagnostic Center's recommendations and the findings required by N.J.S. 2A:164-5, to commit the offender to the required program of specialized treatment. Cf. State v. Schreffler, 63 N.J. Super. 148, 152 (App. Div. 1960).
Defendant insists upon institutional treatment. The point just discussed was raised by assigned counsel at his express request. He must, of course, realize that a commitment for treatment under N.J.S. 2A:164-6 is for an indeterminate term, in which the maximum and minimum periods of confinement are not fixed, though the maximum is limited by the statute, as pointed out in State v. Newton, 30 N.J. Super. 382 (App. Div. 1954), affirmed 17 N.J. 271 (1954). And see State v. Schreffler, above, 63 N.J. Super., at page 152.
The County Court should therefore have imposed the following sentences: (1) under indictment No. 147-62, assault with intent to rape, commitment to Greystone Park or such other institution as may be designated by the Commissioner, for an indeterminate term; (2) on indictment No. 149-62, rape, commitment to such institution for an indeterminate term; and (3) on indictment No. 148-62, breaking and entering with intent to rape, a State Prison sentence of 5-7 years. *178 Since hope of successful treatment is the purpose of the Sex Offender Act, the first two sentences should be concurrent. The third sentence may also be made concurrent with the second, since both offenses stem from the same factual complex; however, this is a matter for the exercise of the trial court's discretion.
The matter is therefore remanded to the County Court for the imposition of sentences conformable to this opinion. As modified, the judgments of conviction are affirmed.