105 N.J. Super. 56 (1969)
251 A.2d 138
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOOKER T. BLANFORD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1969.
Decided March 10, 1969.
*57 Before Judges CONFORD, KILKENNY and LEONARD.
*58 Mr. Thomas Menchin, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Matthew J. Scola, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals from a denial of post-conviction relief by the Essex County Court. He complains of his commitment pursuant to the Sex Offender Act (N.J.S. 2A:164-3 et seq.) consequent upon his conviction in 1965 on a plea of guilty to an indictment charging carnal abuse (the victim being a 13-year-old girl).
In a report to the court by the Menlo Park Diagnostic Center defendant was found to come within the purview of the Sex Offender Act, and the court consequently committed him to the Special Treatment Unit for Sexual Offenders at Rahway State Prison for an indeterminate term not to exceed the statutory maximum for his crime.
The major point made by defendant is that he was denied due process when found to be a sex offender and committed under the act without having had an opportunity to confront witnesses and present evidence. Reliance is had upon the decisions in Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), and United States ex rel. Gerchman v. Maroney, 355 F.2d 302 (3 Cir. 1966).
The cited cases involved sex-offender-type statutes of Colorado and Pennsylvania, basically similar to each other, which provided that after defendant's conviction of certain sex crimes, and the submission of a psychiatric report, the sentencing judge was authorized to impose a term of indeterminate imprisonment, from one day to life in a state institution, if he believed defendant, if at large, would constitute *59 a threat of bodily harm to the public, or to be an habitual offender and mentally ill. The state parole board could parole the defendant at any time it deemed the interests of justice might so require, after a periodic review of defendant's condition. The courts in the cited cases found that these statutes, in effect, legislated different criminal punishment from the statutory penalty for the sex offense on which defendant was convicted, and of a much more serious degree  potentially life imprisonment. It was held that in such circumstances basic concepts of fairness and due process required that defendant be afforded a hearing at which he could confront the witnesses against him, cross-examine, and adduce counter proofs, before being subjected to a judicial finding of the facts which could implicate the heavier punishment. To the same effect is People v. Bailey, 21 N.Y.2d 588, 289 N.Y.S.2d 943, 237 N.E.2d 205 (Ct. App. 1968).
Analysis of our own statute shows it to differ in at least one material respect from those dealt with in the cited decisions. The indeterminate commitment on the psychiatric report of the existence of the statutory elements[1] cannot be for a period of time greater than the legal maximum for the crime of which the offender was convicted. N.J.S. 2A:164-6. The person so committed may be released under parole supervision (which also cannot be for longer than the statutory maximum term, id.,) by the State Parole Board after recommendation by a special classification review board. N.J.S. 2A:164-8. It is true that, in contrast with ordinary imprisonment, eligibility for parole is indefinite during the entire period and that there is no credit for "good behavior" or for "work time." On the other hand, the prisoner may be paroled at an earlier time *60 than under a straight sentence for the crime, and monetary compensation is allowable in lieu of remission of time for work performed. N.J.S. 2A:164-10.
We conclude, therefore, that the findings of the statutory facts for special commitment under the act do not entail a heavier penalty on the offender, but only a different, specially adapted method of dealing with the offender, for both his benefit and that of society, during a period which cannot exceed that for which he was alternatively subject to penal incarceration for the crime of which he was convicted. The basic "due process" rationale of Specht and the other cases relied on by defendant is thus not here apposite. See Shone v. Maine, 286 F. Supp. 511, 514 (D.C.S.D. Me. 1968). That the act does not deprive the offender committed thereunder of equal protection of the laws was firmly established in State v. Wingler, 25 N.J. 161, 174-175 (1957).
In the Wingler case the court also held that the Sex Offender Act should be construed as requiring, in the interests of justice, that before sentencing pursuant to the act, the Diagnostic Center's report be submitted to defendant and he be offorded an opportunity to be heard thereon. 25 N.J., at p. 179. Whether this contemplated the plenary adversary-type hearing required under Specht need not here be decided, in view of our holding, above, that the potential consequences of the court's action on the report are not such as to invoke the Specht doctrine.
Defendant next argues that the diagnostic report submitted to the court in his case was deficient in two respects: (1) it lacked any finding that his conduct was characterized by a "pattern of repetitive, compulsive behavior," and (2) it contained no "clinical findings" to support a finding of such behavior, as apparently called for by N.J.S. 2A:164-5. It suffices to say that we have read the report and conclude that it does indeed contain clinical findings and that by the plainest implication, although not in haec verba, it finds that defendant's conduct was characterized *61 by repetitive, compulsive behavior. The substance of the statutory requirement is met.
Defendant contends that the doctor who examined him at the Center was not a competent expert. The record does not support the allegation.
Defendant maintains that the Special Treatment Unit at Rahway is a farce and that Rahway is nothing but a prison. Nothing is presented to support the allegation. It is to be presumed that the Commissioner of Institutions and Agencies has, as required by the act, designated this facility as one where the offender will be submitted "to a program of specialized treatment for his mental and physical abberrations." N.J.S. 2A:164-5, 6(b).
It is next asserted that defendant's transfer to Rahway is arbitrary and a denial of equal protection. This argument lacks merit. State v. Newton, 17 N.J. 271, 275-276 (1955); State v. Bray, 67 N.J. Super. 340, 347 (App. Div. 1961); N.J.S. 2A:164-7. No affirmative demonstration of arbitrariness in the transfer has been made. See State v. Wingler, supra, 25 N.J., at pp. 180-81.
It is also argued that defendant was not given a physical examination while undergoing study at the Center, as contemplated by N.J.S. 2A:164-3. This is without merit. The requirement is directory and not mandatory. State v. Berrios, 91 N.J. Super. 444, 446 (App. Div. 1966). In any case, the allegation is not substantiated, nor is it an appropriate complaint in post-conviction proceedings.
Finally, it is contended that defendant's presentence investigation was incomplete, within the requirements of R.R. 3:7-10(b). This is sheer conclusion without any substantiation or particularization whatever.
Judgment affirmed.
NOTES
[1] "The offender's conduct was characterized by a pattern of repetitive, compulsive behavior; and * * * either violence * * * in the commission of the offense; or the victim was under the age of 15 years * * *." N.J.S. 2A:164-5 (as of the date of commitment in this case).