56 N.J. 372 (1970)
267 A.2d 1
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS HORNE, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MAILYOR ANDREWS, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOOKER T. BLANFORD, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES COLEMAN, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NORRIS BARNES, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued June 1, 1970.
Decided July 6, 1970.
*373 Mr. Thomas Menchin, Assistant Deputy Public Defender, and Mrs. Susan T. Sinins, Assistant Deputy Public Defender, argued the causes for appellants (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Richard Newman, Deputy Public Defender; Mrs. Marcia Richman, Deputy Public Defender; and Mr. Gerald T. Foley, Jr., Deputy Public Defender, of counsel; Mrs. Martha K. Kwitny, on the brief).
Mr. David S. Baime, Assistant Prosecutor of Essex County, argued the causes for respondent in the Blanford, Andrews and Horne matters (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. Donald R. Del Monte, Assistant Prosecutor of Morris County, argued the cause for respondent in the Coleman matter (Mr. Charles M. Egan, Jr., Prosecutor of Morris County, attorney).
Mr. Alfred M. Bitting, Assistant Prosecutor of Burlington County, argued the cause for respondent in the Barnes matter (Mr. Dominick J. Ferrelli, Prosecutor of Burlington County, attorney).
The opinion of the court was delivered by JACOBS, J.
The Appellate Division denied post-conviction relief in the reported cases of State v. Blanford, 105 N.J. Super. 56 (1969); State v. Andrews, 105 N.J. Super. 62 (1969); and State v. Horne, 105 N.J. Super. 297 (1969). It also denied post-conviction relief in the unreported case of State v. Coleman and rejected the defendant's appeal in the unreported case of State v. Barnes. We granted certification for the sole purpose of reviewing the scope of *374 the right of these defendants to hearing after their convictions but before their sentencing under the Sex Offender Act (N.J.S.A. 2A:164-3 et seq.). 54 N.J. 248 (1969); 54 N.J. 506 (1969); 54 N.J. 507 (1969); 54 N.J. 513 (1969); 55 N.J. 358 (1970).
In State v. Wingler, 25 N.J. 161 (1957), we upheld our Sex Offender Act though it failed to embody any express requirement for hearing prior to sentencing thereunder. However, we held that, apart from any constitutional compulsion, the trial court should submit the Menlo Park Diagnostic Center's report to the defendant and afford to him an opportunity to be heard thereon. 25 N.J. at 179. There was nothing whatever in Wingler or in its implementing rules (R.R. 3:7-10(c); R. 3:21-3) to suggest that the contemplated hearing would be other than a traditional judicial one in which evidence is duly "received and weighed" (New Jersey State Bd. of Optometrists v. Nemitz, 21 N.J. Super. 18, 28 (App. Div. 1952)). Despite this, the practice developed in the trial courts of confining the defendant to an attack on the sufficiency of the report on its face in the light of the statutory standards (N.J.S.A. 2A:164-5); in other words, even where he challenged the accuracy and validity of the factual and conclusional assertions in the report, the State was not called upon in the trial court to present its supporting evidence, psychiatric and otherwise, with fair opportunity for cross-examination. The defendants now before us contend that such failure to afford them plenary hearings on their challenges to the Center's reports not only disregarded their procedural rights under Wingler and its implementing rules but also deprived them of their constitutional rights under Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).
In Specht the defendant was convicted for indecent liberties under a Colorado statute which carried a maximum sentence of 10 years. He was sentenced, without a full hearing, under a separate Colorado Sex Offender Act for an indeterminate term of one day to life. The Supreme *375 Court held that this was constitutionally improper, noting in the course of its opinion, that Colorado's statute was not unlike the customary recidivist statute which entails, upon an appropriate factual finding, increased punishment beyond that fixed for the substantive offense. See N.J.S.A. 2A:85-9, 13; State v. Booker, 88 N.J. Super. 510, 515 (App. Div. 1965), cert. denied, 384 U.S. 944, 86 S.Ct. 1472, 16 L.Ed.2d 543 (1966). In State v. Blanford, supra, 105 N.J. Super. 56, the Appellate Division pointed out that the Colorado statute differed in material aspects from our own (105 N.J. Super at 59); in particular, it stressed that unlike Colorado a defendant's commitment in New Jersey under its Sex Offender Act may not, in any event, exceed the maximum prescribed by statute for the substantive offense. N.J.S.A. 2A:164-6. The Appellate Division held therefore that Specht was not controlling here and that a plenary hearing was not constitutionally required. 105 N.J. Super. at 60. The recent determination by the third circuit in United States Ex Rel. Demeter v. Yeager, 418 F.2d 612 (1970) was to the same effect.
We assume, for present purposes, that Specht is not controlling and that no issue of constitutional dimension is before us; we hold nonetheless that where the defendant duly challenged the sufficiency or any material aspect of the Center's report he was entitled, under Wingler and its implementing rules, to be confronted with the witnesses against him, with the right to cross-examine and with the right to offer evidence on his own behalf. Wingler specifically directed that the defendant be given a copy of the Center's report with "opportunity to be heard thereon." 25 N.J. at 179. R.R. 3:7-9(c) repeated this language and R. 3:21-3 directed that the trial court "shall advise defendant of his opportunity to be heard thereon and shall afford him such hearing." Any lingering doubts that Wingler and its implementing rules contemplated a hearing in the traditional judicial sense with full opportunities of confrontation, cross-examination and defense should have been *376 dispelled by the implications of our recent holding in State v. Kunz, 55 N.J. 128 (1969) and its treatment of Wingler. 55 N.J. at 140-41, 146; cf. State v. Blanford, supra, 105 N.J. Super. at 60.
In Kunz the defendant was convicted of having purchased a stolen automobile in violation of N.J.S.A. 2A:139-1. He was sentenced to a prison term without having been afforded any opportunity to examine the presentence report upon which the trial judge had relied. On appeal, we set aside the prison term and remanded the matter for resentencing. We held that the defendant was entitled, prior to sentencing, to examine the presentence report and challenge matters set forth therein. On such challenge the trial judge could disregard the challenged matter and so declare. However, any challenged matter which was not being disregarded would have to be the subject of proof. The burden would be on the State to introduce its evidence supporting the challenged matter and the defendant would have the right to cross-examine and introduce evidence on his own behalf. In response to the suggestion that this would be unduly burdensome on the judicial process, we noted that in the occasional instances where the challenged matter was crucial to the sentencing process, the risk of injustice was "far too great to proceed without proof." 55 N.J. at 146.
All of the foregoing applies with even greater force when dealing with the sentencing process under the Sex Offender Act. See State v. Wingler, supra, 25 N.J. at 178-79. That Act directs that whenever the defendant is convicted of a designated sex offense he shall be committed to the Diagnostic Center for physical and mental examination. N.J.S.A. 2A:164-3. If, through clinical findings at the Center, it is determined that the defendant's conduct was characterized by "a pattern of repetitive, compulsive behavior" and either "violence" or "age disparity" then the court is directed, upon recommendation of the Center, to submit the defendant to "a program of specialized treatment for his mental and physical aberrations." N.J.S.A. 2A:164-5. *377 The trial court may place the defendant on probation for outpatient psychiatric treatment or may commit him to an institution for treatment with no minimum prescribed but in no event beyond the statutory maximum for his crime. N.J.S.A. 2A:164-6.
There is no question that the matters set forth in the report of the Diagnostic Center are crucial to the sentencing process under the Sex Offender Act. See State v. Thompson, 84 N.J. Super. 173, 177 (App. Div. 1964). Nor is there any question that, even if it be accepted as not more burdensome, a sentence under the Sex Offender Act differs in various respects from an ordinary sentence for the substantive offense. See State v. Blanford, supra, 105 N.J. Super. at 59-60; State v. Schreffler, 63 N.J. Super. 148, 152 (App. Div. 1960). As in Kunz, where the defendant challenges the accuracy or validity of the report's material factual or conclusional assertions on which the sentence is being based, the matter must proceed to proof beyond the report itself (cf. Phillips v. Erie Lackawanna R.R. Co., et al., 107 N.J. Super. 590 (App. Div. 1969), certif. denied, 55 N.J. 444 (1970)) with the burden on the State to introduce its supporting material evidence, psychiatric and otherwise, and the right in the defendant to cross-examine and introduce material evidence on his own behalf. See State v. Wingler, supra:
Judicial determinations that the statutory standards have been met have far-reaching consequences and may result in confinement for very long periods of time. Decent regard for the social and individual interests concerned requires that such determinations be made only upon careful judicial deliberation and after fair opportunity for hearing has been afforded.
25 N.J. at 181.
In pointed response to the State's contention that plenary hearings under the Sex Offender Act would be unduly burdensome, the defendants refer to statistical materials and out-of-state practices which evidence the contrary. They note that "there were only 61 persons returned from the *378 Diagnostic Center with a recommendation for treatment last year" and that many of these "will be content with their status because they received probation or anticipate early parole"; they further note that of the 1318 men institutionalized under the Sex Offender Act between April 11, 1949 and June 30, 1969 only 212 men remained on "Institutional Census as of June 30, 1969 (Including Returnees)"; and finally they point out that many out-of-state Sex Offender Acts contain explicit requirements for plenary hearings and that inquiries as to experiences thereunder have disclosed no undue burdens. See Deering's Cal. Code Ann., Welfare & Institu., § 6300 et seq. (1969); D.C. Code Ann., § 22-3501 et seq. (1967); N.H. Rev. Stat. Ann., § 173-A:1 et seq. (Supp. 1969); Mass. Ann. Laws, Ch. 123A, § 1 et seq. (1965); Note, "The Plight of the Sexual Psychopath," 41 Notre Dame Lawyer 527 (1966); Swanson, "Sexual Psychopath Statutes: Summary and Analysis," 51 J. Crim. L.C. & P.S. 215 (1960).
In particular, the defendants submit a report dated February 24, 1970 from the Wisconsin Department of Justice which describes the Wisconsin practice since Huebner v. State, 33 Wis.2d 505, 147 N.W.2d 646 (1967), where the court held that a defendant may not be committed for treatment as a sex deviate under the Wisconsin Act without a plenary hearing before the sentencing judge sitting without a jury. See Buchanan v. State, 41 Wis.2d 460, 164 N.W.2d 253 (1969). The report indicates that about "one-third to one-half of the defendants waive their right to a hearing"; when hearing is not waived a "state psychiatrist usually testifies and in many cases he is accompanied by a state psychologist and social worker"; and the defendant "has the right to counsel, process to compel attendance of witnesses, production of evidence, [and] examination by a doctor or psychiatrist of his own choosing. * * *" See 147 N.W.2d at 655.
In the light of the above, no exceptional trial burdens are to be anticipated but, even if this were not so, plenary hearing *379 would still be required, for as was said in Kunz, the risk of injustice would be "far too great to proceed without proof." 55 N.J. at 146. The State contends that even though plenary hearing is required, these particular defendants waived their right to such hearing by failing to demand it at the time of their sentencing. As we have already noted, the trial courts despite Wingler adopted the practice of confining the defendant to an attack on the sufficiency of the report on its face. Request for plenary hearing by these defendants would presumably have been futile and examination of their sentencing transcripts confirms the belief that it would not be fair to infer waiver from their failure to make such request. Cf. United States Ex Rel. Gerchman v. Maroney, 355 F.2d 302, 312-13 (3 Cir. 1966); People v. Bailey, 21 N.Y.2d 588, 289 N.Y.S.2d 943, 237 N.E.2d 205, 209 (1968). All in all, we are satisfied that the interests of justice would best be served by now affording to these defendants the plenary hearings they seek as to whether their indeterminate commitments are valid under the standards set forth in the Sex Offender Act. If the State's original personnel is not available there may of course be early reexaminations towards suitable redeterminations, and following the hearings there will of course be appropriate trial court judgments with resentencing where necessary. See State v. Strupp, 101 N.J. Super. 94, 98 (App. Div. 1968); State v. Berrios, 91 N.J. Super. 444, 446 (App. Div. 1966); State v. Minter, 55 N.J. Super. 562 (App. Div. 1959); State v. Flood, 32 N.J. Super. 161 (App. Div. 1954).
Remanded for further sentencing proceedings in conformity with this opinion.
For remandment  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
Opposed  NONE.