128 N.J. Super. 513 (1974)
320 A.2d 527
THE STATE OF NEW JERSEY,
v.
WALTER KOZARSKI, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 14, 1974.
*515 Mr. Arnold Golden for the State (Mr. Thomas F. Shusted, Prosecutor of Camden County, attorney).
*516 Mr. Joel B. Korin for the defendant (Mr. Herbert I. Wachstein, Public Defender, attorney).
KING, J.C.C., Temporarily Assigned.
Defendant was convicted in this court during the year 1973 on a charge of impairing the morals of a minor, specifically, committing the act of fellatio on an 11-year-old boy. Following the conviction the court directed the filing of a second offender accusation pursuant to the statute, N.J.S.A. 2A:85-8. Also following conviction the defendant was referred to Menlo Park Diagnostic Center for evaluation pursuant to the Sex Offenders' Act, N.J.S.A. 2A:164-3 et seq. At Menlo Park defendant was found to be a repetitive, compulsive offender within the meaning of the act, N.J.S.A. 2A:164-5. The Menlo Park authorities indicated that if the court were to incarcerate defendant, the appropriate facility would be the Diagnostic Unit, State Prison Farm, Rahway. Defendant now challenges his Menlo Park classification as a chronic offender and requests a hearing under State v. Horne, 56 N.J. 372 (1970). Defendant also moves to strike the second offender accusation and for disqualification of the court. Defendant further argues that if his sex offender status is affirmed, the enhanced punishment envisioned by the Habitual Offender Act will conflict with and be repugnant to the therapeutic goals of the Sex Offender Act. Additionally, defendant urges that the Habitual Offender Act is unconstitutional on its face as well as in its application to him.
The presentence report discloses that in 1965 defendant was convicted on three counts of debauching the morals of a minor, each count involving fellatio on a young boy. At that time he was classified at Menlo Park as a repetitive compulsive sex offender. For these offenses he received two three-year suspended State Prison sentences and two years' probation with psychiatric treatment. In June 1968 he was arrested and charged with two counts of lewdness, exposing himself to young girls. He was convicted on the lewdness *517 charges in February 1969 and sentenced to a six-year maximum indeterminate term at the Rahway Diagnostic Center after again having been classified as a repetitive, compulsive sexual offender by Menlo Park. While awaiting trial on the June 1968 lewdness charges defendant was arrested and charged with firing a loaded weapon at his wife in December 1968. He was convicted in 1970 on this charge and received a suspended sentence and probation consecutive to the six-year maximum indeterminate term imposed on the 1969 lewdness conviction he then was serving at Rahway. Defendant served 2 1/2 years at the Rahway Diagnostic Center on the February 1969 sentence and was released on parole in October 1971. On March 12, 1972 he was arrested on the present charge of impairing the morals of a minor, N.J.S.A. 2A:96-3, a misdemeanor with a maximum potential sentence of three years. He was returned to Rahway as a parole violator and was convicted on the present morals charge in June 1973.
At defendant's hearing on his Menlo Park classification as a repetitive compulsive sexual offender the State presented testimony by two psychiatrists who participated in his classification, Dr. Martin and Dr. Brancale. Defendant presented no testimony but asserted that his deviant tendencies were caused by a blood metabolism condition known as hypoglycemia. No defense of lack of mental capacity was presented at trial. Both of the state's physicians discounted any relationship between the blood condition and the sexual problem. The court was especially impressed with the testimony of Dr. Brancale, who has served as director of Menlo Park for 26 years and who has specialized in correctional psychiatry. His classification appears well justified, if not mandatory, and certainly meets the burden of proof imposed upon the prosecution by State v. Horne, supra.
Defendant first moves to disqualify the court because of the court's instruction to the prosecutor to file the second offender accusation under N.J.S.A. 2A:85-8. The procedure for filing is described in N.J.S.A. 2A:85-13. The *518 statute provides that if the offenses resulting in the second offender conviction "are such as to warrant the imposition of a penalty greater than the maximum * * *, then the court shall direct the prosecutor * * * to file an accusation accusing * * * [the defendant of the] prior convictions." This procedure was followed here. The court was of the opinion that the three-year maximum sentence was not adequate to protect the interests of society and to insure maximum potential rehabilitative consideration for defendant. The court quite naturally anticipated a Menlo Park classification as a chronic, repetitive sexual offender at the time the prosecutor was directed to file the accusation in view of the prior classifications. Here we have a defendant convicted a third time of sexual offenses with children and once of a violent assault with a loaded weapon upon his wife. A previous period of incarceration and treatment for 2 1/2 years at the Rahway Diagnostic Center was unproductive in preventing the offense for which defendant presently stands convicted. The coupling of these sexual offenses against children, with a demonstrated capacity for violent assault is a disturbing situation for the court to consider.
The predecessor statute to N.J.S.A. 2A:85-13 laid the duty of filing a multiple offender accusation upon the county prosecutor, stating "it shall be the duty of the prosecutor of the county" to file an accusation. N.J.S.A. 2A:85-13 (1951). The reason for shifting the responsibility to the judiciary for filing the accusation is obtained from the statement accompanying Senate Bill 285 introduced on March 18, 1953, which eventually became L. 1953, c. 166, our present N.J.S.A. 2A:85-13:
The defendant's previous record is known before sentence. Where the court intends to sentence defendant as a multiple offender, the defendant is entitled to a trial to prove that he is a multiple offender, but otherwise no such trial is necessary. Under section 2A:85-13 as it now stands, numerous accusations have been filed against defendants who thereafter were nevertheless sentenced to no more than the maximum for a first offense. Under this proposed amendment, such accusations will be filed only when necessary. The practice under the *519 present statute is expensive, takes much time in preparation and trial, slows up sentencing, and keeps defendants in the county jail at county expense for long periods before transfer to State institutions.
The Attorney-General and all of the county prosecutors favor the passage of this bill.
The apparent legislative intent was to provide a procedure whereby the accusation would be filed only when a court was actually giving serious consideration to sentencing above the statutory maximum for a first offender. Obviously such instances would be rare because of the broad range of discretion already granted the trial judge under the general sentencing statutes, e.g., robbery while armed, 25 years; rape, 30 years; murder in second degree, 30 years. Defendant asserts that the judge's direction to file the second offender accusation gives rise to a compulsion for disqualification under R. 1:12-1 which states as reasons for recusing: "(d) giving his opinion upon a matter in question in the action; (e) expressing personal interest in the event of the action; and (f) providing defendant with reason to believe a fair and unbiased hearing and judgment might be precluded." To heed defendant's argument would require disqualification whenever the statute is invoked. The utilization of the Multiple Offender Act creates no new substantive crime but does enhance punishment. State v. Washington, 47 N.J. 244 (1966). This power has been given to the sentencing judge by the Legislature. In State v. Jennings, 126 N.J. Super. 70 (App. Div. 1972), Judge Conford said:
In that sense, use of the statute by the court is merely a phase of the permissible exercise of discretionary judgment as to what is appropriate punishment for a particular offender within available legal limits. The statute authorizes the court to require the filing of a multiple offender accusation when the court thinks the current offense is such as to warrant imposition of a greater penalty than the maximum allowable by law for that offense. N.J.S.A. 2A:85-13. We find no arbitrary exercise of discretion in that regard below * * *" [at 79-80]
In this case there was no factual dispute as to the applicability of the Multiple Offender Act. The invocation *520 of judicial discretion to enhance the sentence from three to six years strikes the court as of no difference in kind than the discretion to utilize probation in an armed robbery case as opposed to a custodial sentence of up to 25 years. Indeed the difference in the later example is much more extreme. The Multiple Offender Act does nothing more than permit the trial court to read the normal sentencing statute as allowing twice the stated sentence for a second offender in the appropriate case. The court does not feel that this approach to sentencing compels disqualification, especially where our system provides an ample avenue of appellate review to correct abuses of judicial discretion in sentencing. State v. Ward, 57 N.J. 75 (1970); State v. Yormark, 117 N.J. Super. 315 (App. Div. 1971); State v. Brunetti, 114 N.J. Super. 57 (App. Div. 1971). Therefore the motion to disqualify the court is denied.
Defendant next argues that the application of the Multiple Offender Act to him is arbitrary and capricious and is thus constitutionally infirm. The proofs demonstrated that in the last ten years in Camden County the statute was only invoked once, and then against a criminal abortionist as a fourth offender. Proofs were also offered by the Public Defender's office to show that from July 1, 1972 to July 1, 1973 that office handled 72,641 charges against various defendants on a state-wide basis. Only one such charge was leveled under the multiple offender statute. Other evidence produced tended to establish that from the inception of the Public Defender's Office in July 1967 until June 30, 1973 the act was invoked only two or three times. It is therefore without question that utilization of the act is extremely rare in this State.
Defendant here claims that the application of the multiple offender statute to his particular case is arbitrary and capricious thereby denying him equal protection of law under the doctrine of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). There the Supreme Court stated:
*521 Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. [118 U.S. at 373-374, 6 S.Ct. at 1073]
There is no doubt as to the facial constitutionality of the multiple offender statute. Similar statutes and other enhanced sentence laws have been enacted in all states and by the Federal Government. See Spencer v. Texas, 385 U.S. 554, 559-560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Annotation 79 A.L.R.2d 826 (1960). The statutes have withstood attacks asserting they violate constitutional standards of double jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection and privileges and immunities. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); McDonald v. Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); Moore v. Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895). The question raised here is whether very infrequent application in itself creates a constitutional infirmity. This argument was considered by the United States Supreme Court in Oyler v. Boles, supra, which declared that something more than infrequent application must be shown. Justice Clark stated:
Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable ... arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. [368 U.S. 456, 82 S.Ct. 506, 7 L.Ed.2d at 453]
Here there has been no showing of intentional and purposeful discrimination through the application of an invidious *522 standard. Moss v. Hornig, 314 F.2d 89, 92-93 (2 Cir.1963); United States v. Rickenbacker, 309 F.2d 462, 464 (2 Cir.1962); cert. den. 371 U.S. 962, 83 S.Ct. 542, 9 L.Ed.2d 509 (1963); Washington v. United States, 130 U.S. App. D.C. 374, 401 F.2d 915, 924-925 (1968); United States v. Maplewood Poultry, 320 F. Supp. 1395 (D. Me. 1970); Mottram v. Murch, 330 F. Supp. 51 (S.D. Me. 1971) rev'd on other grounds 458 F. 2d 626 (1 Cir.1972); State v. Boncelet, 107 N.J. Super. 444, 452, 453 (App. Div. 1969). Indeed, it would appear that defendant may be uniquely qualified for treatment as an habitual offender. Here multiple sex offenses and one violent assault are the background presented, with only a three-year maximum sentence available if the act is not invoked. Previous treatment as a sex offender for 2 1/2 years has proven inadequate. Defendant's conduct has itself generated the basis for selectability.
Defendant finally argues that invocation of the multiple offender statute is inherently incompatible with a classification compelling sentencing as a compulsive repetitive sex offender under N.J.S.A. 2A:164-3 et seq. Defendant asserts that the underlying philosophy of the Sex Offender Act is treatment and hopefully an ultimate cure, while the purpose of enhancing the punishment of the habitual offender is essentially punitive and preventative as to the particular individual.
Our courts have stated the purpose of the Sex Offender Act as follows: The philosophy of the Sex Offender Act is that those who come within it require treatment, not punishment ... The purpose of the act is cure of a defendant. That is the prime justification for the provision of the act that, regardless of the circumstances of the offense or the willingness of the victim, a defendant is subject to confinement until he is "capable of making acceptable social adjustment in the community." [State v. Mickschutz, 101 N.J. Super. 315, 320 (App. Div. 1968)]
The court in State v. Andrews, 105 N.J. Super. 62 (1969) noted that the "philosophy of the act is treatment, not *523 punishment, of the offender, and the goal his cure." The theory of the habitual offender statute is imposition of a greater penalty "where such defendant has persistently engaged in unlawful activities." State v. Washington, 47 N.J. 244, 248 (1966). The court perceives no conflict here with any legislative intent, if indeed any such intent was collectively present in the Legislature concerning the inter-relationships of the two acts. The specialized treatment under the Sex Offender Act is naturally related to therapy for the social aberration. The statute declares that upon classification as a sex offender "it shall be the duty of the court, upon recommendation of the Diagnostic Center, to submit the offender to a program of specialized treatment for his mental and physical aberrations." N.J.S.A. 2A:164-5. In the event of incarceration the institution designated by the Commissioner of Institutions and Agencies pursuant to N.J.S.A. 2A:164-6 is the Diagnostic Unit at Rahway. The truly differentiating feature of the act insofar as a custodial sentence is concerned is the indeterminate characteristic of the sentence under N.J.S.A. 2A:164-8. The court does not specify any minimum sentence but in no event may a sentence exceed "a period of time greater than that provided by law for the crime of which such person was convicted." N.J.S.A. 2A:164-6. A person committed to confinement under the act "may be released under parole supervision when it shall appear to the satisfaction of the state parole board, after recommendation by a special classification review board appointed by the state board of control of institutions and agencies, that such person is capable of making an acceptable social adjustment in the community." N.J.S.A. 2A:164-8. The statute also requires the director of the institution to report to the Commissioner in writing at least semi-annually his recommendation as to continued confinement or release on parole.
This court finds no real conflict between the two acts or between the two social policies enunciated therein by the *524 legislature. Invocation of the habitual offender act deprives defendant of none of the benefits contemplated by the Sex Offender Act. He is still committed to the Diagnostic Unit at Rahway where his specialized treatment is afforded. He received no minimum sentence and his custodial sentence still remains "indeterminate." Defendant remains eligible for release at any time during the period of commitment upon recommendation that he is capable of making the appropriate adjustment in the community. His right of semi-annual reporting to the Commissioner on his parole status still abides, assuring him of virtual constant reconsideration of his status by the proper authority.
Application of the Habitual Offender Act to increase the maximum does afford the state rehabilitative agency with additional time within which a defendant may hopefully be treated and cured. This approach also lessens the likelihood of release back to society at a time when the hoped for cure has not been obtained and further therapy is indicated. Use of the increased maximum seems most desirable here where defendant has so recently demonstrated recidivistic characteristics after 2 1/2 years' confinement at the Diagnostic Center. He has obviously not obtained the goal of compatible adjustment with society. In this case, where defendant is both a sexual and an habitual offender, with a demonstrated capacity for violence, it seems highly consonant with the philosophies of both legislative schemes to afford defendant treatment for a potentially greater period in view of his repetitive characteristics, subject always to the continuing necessity for such therapeutic committment as determined by the institution and the parole board. Defendant is therefore sentenced to a six-year maximum indeterminate sentence at the Rahway Diagnostic Center, a term twice the length of the term provided by statute as the penalty for the misdemeanor for which he stands convicted.