137 N.J. Super. 89 (1975)
347 A.2d 816
STATE OF NEW JERSEY,
v.
JAMES SMITH a/k/a JAMES BRAITHWAITE, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 6, 1975.
*91 Mr. Archibald Kreiger, Assistant Prosecutor, for the State (Mr. Thomas J. Shusted, Camden County Prosecutor, attorney).
Mr. James H. Klein, Deputy Assistant Public Defender, for defendant (Mr. Stanley Van Ness, Public Defender, attorney).
*92 KING, J.C.C., Temporarily Assigned.
Defendant here is charged in a seven-count indictment and moves prior to trial for a severance of the final count on the grounds of prejudicial joinder. The relevant rules state:

Rule 3:7-6  Joinder of Offenses
Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged, whether high misdemeanors or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. Relief from prejudicial joinder shall be afforded as provided by R. 3:15-2.

Rule 3:15-2  Relief from Prejudicial Joinder

* * * * * * * * *

(b) Motion by defendant and State.
If for any other reason it appears that a defendant or the State is prejudiced by a joinder of offenses or of defendants in an indictment or accusation the court may order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief.
Counts one through six charge defendant with various criminal acts alleged to have occurred on March 1, 1975 in Pennsauken Township, Camden County. The charges are possession of a revolver in a public place (N.J.S.A. 2A:151-41(a); possession of a revolver while on a school premises (N.J.S.A. 2A:151-41.1); possession of a deadly weapon with intent to use same unlawfully against another (N.J.S.A. 2A:151-56); assault with intent to kill (N.J.S.A. 2A:90-2); assault while armed (N.J.S.A. 2A:151-5), and atrocious assault and battery (N.J.S.A. 2A:90-1). The final count charges defendant with being a person in possession of a firearm after having previously been convicted of a crime (N.J.S.A. 2A:151-8).
The shooting is asserted to have occurred on the parking lot of the Bishop Eustace High School in Pennsauken following a closely played and important basketball game between Atlantic City High School and Camden High School. The game was played at Bishop Eustace, a neutral court, *93 because of anticipated disruptive conduct were the game to have been played on one of the contestant's home courts. A firearm was discharged from a chartered bus filled with Atlantic City rooters into the body of Calvin Cook, a student of Camden High School. Cook is a popular and well known member of the Camden High School community who was recently honored as an All South Jersey football player. The accused is a resident of Atlantic City. Defendant here stresses that in light of the entire atmosphere of the case, including trial in the home county of the victim, joinder of the final count generates a probability of undue prejudice. The prior conviction of this defendant involved possession of cocaine.
The federal due process clause does not presently appear to require severance here as a matter of federal constitutional right. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). In Spencer the United States Supreme Court considered appeals from three unrelated Texas state court convictions. Petitioners had been convicted of various primary charges and were subjected to enhanced punishment on the basis of Texas' habitual criminal statutes. Through allegations in the indictments and introduction of evidence of prior convictions the jurors were fully informed of defendant's past records of crime but were instructed to disregard such information in adjudicating guilt or innocence on the primary charges.
In Spencer (No. 68) petitioner was indicted for murdering with malice his common law wife. The indictment charged, and the state proved, that petitioner had previously been convicted of murder with malice. The proof of the prior murder entitled the jury to sentence defendant to death or to prison for not less than life. If a prior malicious murder conviction were not proven, the jury could fix the penalty anywhere between death and a prison term of not less than two years.
In Bell (No. 69) petitioner was charged with robbery. The state was permitted to prove he had previously been convicted *94 of bank robbery. Defendant's exposure on the present charge alone was a possible sentence from five years to life. If the jury accepted the proof of defendant's previous robbery conviction as part of their verdict, then the sentence of life as provided by law would be imposed by the judge.
Reed (No. 70), which involved a third offender prosecution for burglary, followed the same practice as Bell.
Justice Harlan, expressing the views of five members of the court, held that although a two-stage jury trial, or some other alternative, might possibly have been used in preference to the procedure followed in the three Texas cases, these procedures, in view of the limiting instructions to the jury, were not an unconstitutional means of serving the valid state purpose of enforcing habitual criminal statutes.
The United States Supreme Court's ruling does not preclude this court from addressing the problem as one of sound judicial discretion and preferable state procedure. New Jersey case law on severance and joinder has not considered this precise situation. The general area of joinder of habitual offender counts is indeed controversial, as evidenced by the split in the court in Spencer. The majority decision emphasizes that a state rule does not run afoul of the Fourteenth Amendment merely because another procedure appears fairer or wiser. It was further acknowledged by the justices joining in the majority opinions that they might reach a different result "were the matter before us in a legislative or rule making context * * *." Spencer v. Texas, supra, 385 U.S. at 568, 87 S.Ct. at 656. The dissenting justices emphasized that such evidence of prior convictions "needlessly prejudices the accused without advancing any legitimate interest of the State." Id. at 570, 87 S.Ct. at 657.
The A.B.A. Project on Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft 1968) adopted the following guidelines one year after Spencer v. Texas, supra:

*95 § 4.4 Evidence of Prior Convictions

When the defendant's prior convictions are admissible solely for the purpose of determining the sentence to be imposed, the jury should not be informed of them, either through allegations in the charge or by the introduction of evidence, until it has found the defendant guilty.
The commentary for § 4.4 indicates that the advisory committee formulated this standard after considering the opinions in Spencer v. Texas. Two reasons were assigned for the adopted standard. Despite cautionary instructions by the judge, there remains a significant risk that knowledge of prior convictions may be considered by the jury in deciding guilt or innocence on the present charge. Additionally, a variety of alternative procedures are feasible which do not carry this risk, and which at most involve a minor inconvenience in postponing a determination of defendant's recidivist status until after the jury has found him guilty on the pending charge. Further guidance in this area is found in the A.B.A. Project on Standards for Criminal Justice, op. cit.

§ 2.2 Severance of Offenses

* * * * * * * * *
(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a) should grant a severance of offenses whenever:
(i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense.
The exercise of sound discretion does not, of course, always require a slavish adherence to federal constitutional minimums. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), held that the prosecution, when seeking to use a confession challenged as involuntary, is required to meet the constitutional minimum proof of voluntariness by a mere preponderance of evidence at the evidentiary hearing prior to submission to the jury. The court noted that states are at liberty to adopt a higher standard. New Jersey had adopted the standard of proof beyond a reasonable *96 doubt in this situation. See State v. Franklin, 52 N.J. 386, 405 (1968). State v. Yough, 49 N.J. 587, 600-64 (1967). "A state is free as a matter of its own law to afford an individual greater protection than is provided by the Federal Constitution." State v. Kleinwaks, 68 N.J. 328 (1975).
In the present case the court is disturbed about the possibility of prejudice from joinder. The disclosure of defendant's previous criminal status as a possessor of cocaine does not logically serve to advance the proofs on the elements of the offenses charged here arising out of a shooting. Clearly, knowledge of the prior conviction plays no role in assisting the jury in the discharge of any of its legitimate functions. At least in Spencer v. Texas, supra, knowledge of the prior convictions assisted the jury in its duty to assess punishment. Evidence of the prior conviction is certainly not admissible under any of the conventional evidentiary exceptions recognized in New Jersey by Evid. R. 55 to show motive, intent, plan, knowledge, identity or absence of mistake or accident. As Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), noted, an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence. Bruton also acknowledged the infirmity of the solution of proper limiting instructions  the justification urged here by the State to allow joinder. Judge Learned Hand suggests the limiting instruction is a "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else". Nash v. United States, 54 F.2d 1006, 1007 (2 Cir.1932). See also, Krulewitch v. United States, 336 U.S. 440, 443, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1944): "The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction." The potential influence on the jury upon disclosure of a previous record was well demonstrated by the Chicago jury *97 study. Kalven & Zeisel, The American Jury, 127-130, 177-180 (1966).
The question here is one of sound judicial discretion to be exercised by the trial court. State v. Moriarty, 133 N.J. Super. 563 (App. Div. 1957); State v. Yedwab, 43 N.J. Super. 367 (App. Div. 1957). Where the fact of defendant's prior conviction is not logically relevant to the present charges, and potential for abuse arising from the factfinder's knowledge of defendant's alleged criminal disposition is substantial, sound judicial discretion requires severance of the final count charging defendant's status as a previously convicted criminal in possession of a firearm.
None of the conventionally acceptable justifications for joinder are persuasively advanced by the State in this case. This is not a continuous transaction situation or a complex scheme of fraud, extortion or other vice. E.g., United States v. Weber, 437 F.2d 327 (3 Cir.1970) (union official extorting monies from various contractors); State v. Begyn, 34 N.J. 35 (1961) (charges of misconduct and extortion by public official properly joined); State v. Cormier, 46 N.J. 494 (1966) (bank loan conspiracy and fraud charges against two corporate officers consolidated for trial). Nor do we have a situation where the proofs of the separate offenses are so intertwined that a requirement of separate trials would place an unreasonable burden on the State. State v. Cook, 47 N.J. 402 (1966) (double murder part of single occurrence); State v. Weiner, 41 N.J. 21 (1963) (15 charges of involuntary manslaughter arising out of sterilization procedures in physician's office); State v. Coleman, 46 N.J. 16 (1965) (another double murder). Improper joinder of unrelated charges not part of a common scheme or plan may well result in reversible error. State v. Orlando, 101 N.J. Super. 390 (App. Div. 1968) (morals offenses committed on children two months apart, improperly joined); State v. Kropke, 123 N.J. Super. 413 (Law Div. 1973) (Several similar offenses not part of common scheme, improperly joined).
*98 Defendant, through his counsel, advises the court that he had not decided if he will take the stand and waive his Fifth Amendment rights. If he does take the stand the impact of the joinder is minimal, if not nonexistent, because of the State's right to examine defendant on prior convictions so as to affect credibility. N.J.S.A. 2A:81-12; State v. Hawthorne, 90 N.J. Super. 545 (App. Div. 1966). Indeed, defendant need not make the decision to testify until after the State's evidence is presented. The court is concerned that the insertion of this charge in the indictment may serve to exert unreasonable compulsion on defendant to waive his historic right to remain silent in the face of the charge. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The use of compulsion in order to procure a nonimmunized waiver of Fifth Amendment rights has "not fared well" in United States Supreme Court history. Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). Defendant here might at least in part feel compelled to testify in order to explain or dispel his status of previous criminality, whereas he well might choose to remain silent if severance of the final count is allowed. Again, the joinder here serves no legitimate state purpose, save perhaps the minimal accomplishment of obviating the need for a brief second trial on the status offense, if the State is successful in obtaining a conviction on the substantive armed assault charges. Since defendant faces a potential maximum of 53 years and a fine of $16,000 (eschewing double jeopardy considerations), exclusive of his exposure on the final count of three years, the actual pertinence of pursuing to conviction the final count in order to assure appropriate sentencing latitude may be doubtful.
Severance or bifurcation of the final count which looks to enhanced punishment for prior offenders indeed seems more consistent with our State's standard, though a seldom invoked procedure, for more severe punishment of recidivists. *99 N.J.S.A. 2A:85-13; State v. Washington, 47 N.J. 244 (1966); State v. Jennings, 126 N.J. Super. 70 (App. Div. 1972); State v. Kozarski, 128 N.J. Super. 513 (Law Div. 1974). This statute permits the court to direct the prosecutor to file a multiple offender accusation if the sentencing judge feels that the multiple convictions warrant the imposition of punishment greater than the maximum available. Severance here is more consistent with the expressed legislative desire that enhanced punishment be treated in a separate and distinct proceeding.
Finally, the prosecution argues that compulsory joinder is mandated by the Supreme Court's recent expressions in State v. Gregory, 66 N.J. 510 (1975). This court reads Gregory as an admonition against fragmenting or segmenting prosecution of a unitary criminal episode. The issue here is totally unrelated to the situation where the prosecutor holds back on certain charges related to the criminal episode, perhaps with a possible eye towards a future trial upon conclusion of his initial effort.
The court finds prejudicial joinder. An order for severance shall be submitted as to the final count of this indictment.