840 A.2d 862 (2004)
366 N.J. Super. 79
STATE of New Jersey, Plaintiff-Respondent,
v.
Theodore LUCKEY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 12, 2003.
Decided January 26, 2004.
*864 Yvonne Smith Segars, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Debra A. Owens, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, LEFELT and PAYNE.
*863 The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant was charged in a three-count indictment with aggravated sexual assault, N.J.S.A. 2C:14-2a(1); sexual assault, N.J.S.A. 2C:14-2b; and endangering the welfare of a minor, N.J.S.A. 2C:24-4a. On May 30, 2001, he entered a guilty plea to count two of the indictment, which alleged second-degree sexual assault. In exchange, the State recommended that counts one and three of the indictment be dismissed and that defendant receive a "flat" "five year prison term." It was further agreed that the No Early Release Act did not apply,[1] but that Megan's Law was applicable.
Prior to sentencing, defendant moved to withdraw his guilty plea. The motion was argued simultaneously with a "Horne hearing" (see State v. Horne, 56 N.J. 372, 267 A.2d 1 (1970)) on May 10, 2002, at which time defendant challenged the finding of the Adult Diagnostic and Treatment Center at Avenel that he qualified as a repetitive and compulsive sex offender within the meaning of N.J.S.A. 2C:47-3.
On June 14, 2002, the plea judge denied defendant's motion to withdraw his guilty plea. The judge also found that defendant was a "repetitive [and] compulsive" sex offender, and "qualifi[ed] for sentencing at the Avenel [Diagnostic and] Treatment Center" ("Avenel"). The judge then found that the mitigating factors outweighed the aggravating factors and sentenced defendant to a term of "five years to the custody of the Commissioner of the Department of Corrections to be served at the Avenel Adult Diagnostic Center."[2] The judge *865 also ordered that defendant was subject to community supervision for life and was to register in accordance with Megan's Law.
On this appeal defendant argues:
POINT I THE COURT ERRED IN DENYING DEFENDANT'S REQUEST TO WITHDRAW HIS GUILTY PLEA.
POINT II IN ORDER FOR A DEFENDANT TO BE SENTENCED AS A SEX-OFFENDER UNDER 2C:47-1, ET SEQ., A JURY MUST FIND THAT HE MEETS THE STATUTORY CRITERIA BEYOND A REASONABLE DOUBT. (Not Raised Below)
POINT III THE COURT ERRED IN FINDING THAT LUCKEY MET THE STATUTORY CRITERIA FOR AN AVENEL SENTENCE BY A PREPONDERANCE OF THE EVIDENCE.
We remand for further proceedings. While the denial of a motion to withdraw a negotiated guilty plea entered on the eve of, or during, trial is rarely overturned, recent opinions filed by our appellate courts, which affect matters still on direct appeal, warrant reconsideration of the motion by the trial court. However, we reject defendant's contention that the findings prerequisite to an Avenel commitment must be made by a jury.

I.
There is no claim that the factual basis for the guilty plea was inadequate. To the contrary, the defendant admitted having a child under ten years of age perform oral sex upon him. However, defendant contends, as he did before the trial court, that his motion to withdraw should have been granted because he had an alibi that he was unable to present due to pressure placed upon him by his previous attorney to plead guilty. On his motion to withdraw his plea, defendant asserted he "gave a statement falsely [to the police] admitting my involvement in the incidents" because he was told he "would be placed in jail without bail" if he did not, and "would be beat up in jail by the prison population." He further claimed that he advised counsel that he was not living at his mother's home, where the alleged events took place, "during the time that the incidents allegedly occurred." Defendant also asserted that counsel advised him that "if I did not plead guilty I would be put on trial the very next day [and] had 24 hours to line up all my witnesses," who "were then living out of the state of New Jersey." Defendant certified that counsel also stated "that if I lost at trial I would receive a sentence of 40 years in jail." Defendant also claimed that he gave "a factual basis that was untrue" as he "could not possibly line up all of [his] witnesses in 24 hours and because [he] was scared of going to jail for 40 years." He maintained that counsel advised him that he had to repeat the story he told the police to the judge, during the presentence interview and at Avenel to get the five-year sentence, and that he "would get into more trouble if [he] did not keep repeating the same story." Finally, at the hearing on the motion, defendant's new counsel explained that defendant's fear stemmed from the fact he was "beaten up in the military because of his [homosexual] sexual orientation" and that a police detective was aware of that in soliciting his admission.
In denying the motion to withdraw the negotiated plea, the trial judge found that there was a sufficient "factual basis for the plea" and that it was made "voluntarily and intelligently." He also noted that it *866 was entered after a "plea cut off" order was relaxed, R. 3:9-3(g), and the trial had actually "begun." The plea transcript does not reveal that the trial had commenced, but the judge's statement to that effect is not contested before us. The plea transcript does reveal that the "plea cut off" was relaxed due to "changed circumstances" including "the age and condition of the victim of tender years." Moreover, the motion to withdraw was not filed for almost eleven months after the plea. Defendant did not appear on the original sentencing date, which was carried until after his arrest pursuant to a warrant issued by the sentencing judge.
Rule 3:21-1 governs motions to withdraw a plea of guilty and states that it "shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice." Rule 3:21-1. Nevertheless, the burden rests on the defendant to establish why the motion to withdraw his or her guilty plea should be granted. As we have said:
[I]t is clear that the burden rests on defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits, so the trial judge is able to determine whether fundamental fairness requires a granting of the motion. Any other approach would automatically require a trial judge to grant such motions, and strip him of any discretion in the matter. Liberality in exercising discretion does not mean an abdication of all discretion.
[State v. Huntley, 129 N.J.Super. 13, 17, 322 A.2d 177, certif. denied, 66 N.J. 312, 331 A.2d 12 (1974).]
Thus, the trial court has considerable discretion in entertaining such a motion, and our review must recognize the discretion to which the trial court's decision is due. State v. Bellamy, 178 N.J. 127, 135, 835 A.2d 1231 (2003); State v. Deutsch, 34 N.J. 190, 197, 168 A.2d 12 (1961). See also State v. Smullen, 118 N.J. 408, 417, 571 A.2d 1305 (1990). In considering the motion, the timing of the plea and the fact it was a negotiated disposition, terminating the need for trial, are factors that must be considered. As the Supreme Court has said:
Although the judge's discretion to vacate a guilty plea is liberally exercised when the defendant's motion, as here, is made before sentencing, in weighing such a motion the possibility of prejudice to the State must be considered. See State v. Deutsch, supra, 34 N.J. at pp. 198, 201, 204, 168 A.2d 12. If a defendant represented by counsel were permitted to withdraw a guilty plea which he voluntarily and knowingly entered after his trial had started, as the defendant in this case is trying to do, the efficient and orderly administration of justice would be impeded. Criminal calendars would become increasingly congested and the State's efforts to effectively prosecute lawbreakers would be seriously hampered by the delays. It is a difficult task at best for the State to assemble its witnesses and prepare its case for a trial on a specified date; it is neither fair nor just to compel the State to repeat this procedure as to the same defendant when the first trial is terminated by the defendant's own guilty plea given freely and understandingly.
[State v. Herman, 47 N.J. 73, 78-79, 219 A.2d 413 (1966).]
In these circumstances, the "claim to be relieved of its consequences must be weighed against the strong interest of the State in its finality." State v. Taylor, 80 N.J. 353, 362, 403 A.2d 889 (1979). See also State v. Smullen, supra, 118 N.J. at 418, 571 A.2d 1305 ("reiter[ating] the important interest of finality to pleas").
*867 Furthermore, the burden of persuasion on the defendant is heavier when the guilty plea is made in connection with a plea bargain:
[W]hen a voluntary and knowing plea bargain has been entered into simultaneously with the guilty plea, defendant's burden of presenting a plausible basis for his request to withdraw his guilty plea is heavier. The approved philosophy of plea bargaining is dependent upon the good faith of both sides in carrying out the bargain when it is voluntarily and knowingly made, is fair and just and is ultimately approved by the trial judge. A whimsical change of mind by defendant, or the prosecutor, will not be a valid reason for altering the bargain. State v. Thomas, 61 N.J. 314, 321-23, 294 A.2d 57 (1972); State v. Wall, 36 N.J. 216, 218, 176 A.2d 8 (1961). Even a belated assertion of innocence will not upset an otherwise validly entered into plea bargain. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); U.S. v. De Cavalcante, 449 F.2d 139 (3rd Cir.1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972).
[State v. Huntley, supra, 129 N.J.Super. at 18, 322 A.2d 177 (parallel citations omitted).]
Thus, when there is a negotiated "plea bargain," the defendant must show that he or she was " `misinformed' about a material element of a plea negotiation" or that his or her "`reasonable expectations,' grounded in the terms of the plea agreement" were not fulfilled, and that he or she "is prejudiced by enforcement of the agreement." State v. Howard, 110 N.J. 113, 122-23, 539 A.2d 1203 (1988). See also State v. Bellamy, supra, 178 N.J. at 134-35, 835 A.2d 1231; State v. Smullen, supra, 118 N.J. at 417, 571 A.2d 1305. "Hence, the plea will not be vacated if knowledge of the consequences would not have made any difference in the defendant's decision to plead." Howard, supra, 110 N.J. at 123, 539 A.2d 1203.
Finally, the nature of the charge may be relevant. That the guilty plea was to sexual assault is of particular significance in this case. As the Supreme Court has observed:
[C]hild-sexual-assault cases are extremely difficult, both for the defendants and the victims. Courts taking pleas are undoubtedly conscious of the need to end the suffering. This trial court tried to balance the interests of finality and fairness to the defendant by fully alerting him to all relevant consequences. This record clearly indicates that the plea of guilty was the product of a free and rational choice, made with the advice of competent counsel. There has been no showing that there may have been a miscarriage of justice.
[State v. Smullen, supra, 118 N.J. at 418, 571 A.2d 1305.]
In taking his guilty plea, the trial judge in this case reviewed with defendant the potential maximum penalty for the charge and the negotiated disposition. The judge informed defendant that it was possible that he might be sentenced to Avenel and, therefore, it was "pretty much of a lock and you can anticipate a custodial sentence" and that his confinement might be "beyond the traditional parole guidelines" because of an Avenel commitment. Therefore, given the factual basis for the guilty plea furnished pursuant to a negotiated disposition at the time of trial, the trial judge cannot be said to have mistakenly abused his discretion in denying the motion to withdraw defendant's guilty plea on the grounds asserted before the judge.
However, two recent opinions suggest that we remand this matter to the trial court for reconsideration of the application *868 to withdraw defendant's guilty plea. See State v. Bellamy, supra; State v. Jamgochian, 363 N.J.Super. 220, 832 A.2d 360 (App.Div.2003). In Bellamy, the Supreme Court held that a defendant must be advised of the potential commitment a sex offender may face under the Sexually Violent Predator Act (SVPA). While Bellamy finished service of his custodial sentence and had become the subject of a SVPA commitment proceeding before seeking to withdraw his plea as part of his direct appeal, id. at 140, 835 A.2d 1231, the Supreme Court made clear that every sex offender not adequately advised of the possibility of a SVPA commitment can seek to withdraw his guilty plea by raising the issue while the matter remains on direct appeal. Id. at 140-41, 835 A.2d 1231. Therefore, although here, unlike Bellamy, the plea form and plea colloquy each included a question about the SVPA, and we do not conclude defendant is entitled to relief under Bellamy, we do not preclude defendant from making a further argument in light of that opinion.
In Jamgochian we held that a defendant who was not fully advised as to the meaning of community supervision for life under Megan's Law was entitled to pursue an attack on the knowing nature of his guilty plea by a hearing on his petition for postconviction relief. State v. Jamgochian, supra, 363 N.J.Super. at 226-27, 832 A.2d 360. We stated the following as dictum in Jamgochian:
We add by way of dictum that we do not today go so far as to hold that a trial court has the obligation to inform a defendant of all the details of community supervision for life. On the other hand, we do not read State v. Kovack, supra, as holding that the mere utterance of a label satisfies the court's obligation under R. 3:9-2 to determine whether a defendant fully understands `the nature of the charge and the consequences of the plea.' Kovack, supra, 91 N.J. at 484, 453 A.2d 521. Chapter and verse are not necessary, but the court should at least assure itself that defense counsel has discussed the matter with his client and defendant understands the nature of community supervision for life as the functional equivalent of life-time parole. If the trial court is aware that a particular aspect of a penal consequence needs clarification then it should take the time to explain further. In some instances, the community supervision can have a greater deleterious effect on the defendant than the actual period of incarceration. The current plea form contains no explanation of the phrase Community Supervision For Life. There is no indication that such supervision is akin to parole in the nature of the possible restrictions. An expanded plea form would be appropriate.
[Id. at 227, 832 A.2d 360.]
As in Jamgochian, the plea form utilized at the time of plea in this case does not define community supervision for life, and because defendant moved to withdraw his guilty plea in the trial court, we remand to the Law Division for further proceedings on that subject.

II.
We reject defendant's contention that, by virtue of the United States Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed.2d 435 (2000), and our Supreme Court's holding in State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001), the prerequisite findings that result in the commitment to Avenel must be determined by a jury, beyond a reasonable doubt, on the theory that such a finding increases the maximum penalty or requires service of more than *869 half of the sentence for the crime to which he pled guilty.
The claim has no historical support under State law because, notwithstanding the extraordinary provisions regarding parole eligibility of sex offenders (see State v. Howard, 110 N.J. 113, 124-25, 539 A.2d 1203 (1988); N.J.S.A. 2C:47-3, -5),[3] the requisite findings have been made by judges since the Sex Offender Act was adopted. See Howard, supra, at 126-31, 539 A.2d 1203; State v. Horne, 56 N.J. 372, 376-77, 267 A.2d 1 (1970); State v. Wingler, 25 N.J. 161, 181, 135 A.2d 468 (1957). And Howard specifically held that the judge is to make the finding by a preponderance of the evidence. 110 N.J. at 131, 539 A.2d 1203. Moreover, although a sex offender sentenced to Avenel could spend more time in treatment than defendants given the same sentence for non-sex crimes, an Avenel commitment does not enhance the sentence or permit defendant's confinement in custody to be longer than the maximum sentence otherwise authorized by statute for the offense of which defendant was found guilty. Accordingly, we reject defendant's claim that a jury must find that [defendant] meets the statutory criteria for sentencing to Avenel by proof beyond a reasonable doubt. See Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); State v. Stanton, 176 N.J. 75, 820 A.2d 637, cert. denied, ___ U.S. ___, 124 S.Ct. 259, 157 L.Ed.2d 187 (2003).
In light of State v. Bellamy and the provisions of N.J.S.A. 2C:47-5, which requires as part of the parole process for those sex offenders who have not achieved a satisfactory level of progress in sex offender treatment, notice to the Attorney General and county prosecutor, together with an evaluation of whether a SVPA commitment is appropriate, see N.J.S.A. 2C:47-5d, we have specifically considered whether there is a sufficient or material relationship between the findings necessary for sex offender classification and commitment to Avenel, N.J.S.A. 2C:47-1 to 3, and a subsequent SVPA commitment, as to require a jury finding with respect to the former.[4] Under chapter 47 of the Code of Criminal Justice, the sentencing judge must determine whether the offender's conduct was characterized by a pattern of repetitive, compulsive behavior and, if so, whether the offender is amenable to sex offender treatment and is willing to participate in such treatment and shall record its findings on the judgment of conviction. N.J.S.A. 2C:47-3(a). In State v. Mumin, 361 N.J.Super. 370, 381-82, 825 A.2d 1144 (App.Div.2003), overruled on other grounds in Bellamy, supra, we described the process by which the SVPA commitment is triggered:
A conviction, adjudication, or a finding of not guilty by reason of insanity, of a sexually violent offense only satisfies one of the criteria necessary to be committed as a sexually violent predator. See N.J.S.A. 30:4-27.26(b). The State must also prove by clear and convincing evidence that the person suffers from a mental abnormality, or personality disorder, *870 which makes the person likely to engage in acts of sexual violence if not confined in a secure facility. Ibid. See also W.Z., supra, 173 N.J. at 133, 801 A.2d 205. The key to commitment is not the predicate offense, but the present mental condition which creates a likelihood of future sexually violent behavior. See In re Commitment of P.C., 349 N.J.Super. 569, 580, 794 A.2d 211 (App.Div.2002).
Moreover, it is not solely the mental condition of the person that is dispositive, but whether the mental condition affects the individual's ability to control his or her sexually harmful conduct. W.Z., supra, 173 N.J. at 130, 801 A.2d 205. As Justice LaVecchia explained in W.Z., our SVPA is essentially the same as the Kansas statute examined in Hendricks in that it `requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated.' Id. at 127, 801 A.2d 205, 173 N.J. 109, 801 A.2d 205 (quoting Kansas v. Hendricks, 521 U.S. 346, 357, 117 S.Ct. 2072, 2080, 138 L. Ed.2d 501, 512 (1997)).
[State v. Mumin, supra, 361 N.J.Super. at 382-383, 825 A.2d 1144).]
In Bellamy, the Supreme Court reviewed the definitions of sexually violent predator, N.J.S.A. 30:4-27.26, and sexually violent offense, ibid., including sexual assault. Bellamy, supra, 178 N.J. at 136, 835 A.2d 1231. It pointed out that a finding that a person is a sexually violent predator requires that a defendant convicted of a sexually violent offense must also be found `likely to engage in acts of sexual violence' such that `the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others.' Ibid. (quoting N.J.S.A. 30:4-27.26). The fact that a defendant has been convicted of an eligible SVPA offense is a sex offender, whether or not found to come within the purview of the sex offender provisions of the Code, N.J.S.A. 2C:47-3, is one basis for a subsequent SVPA commitment application, if the requisite findings are made. See N.J.S.A. 30:4-27.26, .28. However, commitment to the Adult Diagnostic and Treatment Center does not trigger a SVPA commitment nor, under the statute, does it expose a defendant to a SVPA commitment to which any other person guilty of a sex offense is not subject. See N.J.S.A. 30:4-27.26, .28. Significantly, if the sex offender treatment at Avenel is beneficial, it is less likely that a SVPA application will be filed. See N.J.S.A. 2C:47-5a, d.
In any event, Bellamy expressly noted that a potential SVPA commitment was not a direct or penal consequence, but rather a collateral consequence of a guilty plea. 178 N.J. at 138, 835 A.2d 1231. Hence, disposition under chapter 47 by a finding that one qualifies for sentencing to Avenel as a sex offender does not trigger the SVPA commitment. Accordingly, we find no basis for concluding that a potential SVPA commitment of a sex offender requires the prerequisites for a sex offender sentence to be made by the jury.
Nor does State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001), compel a different holding, as defendant contends. There, the Court held that the No Early Release Act (NERA), which requires service of 85 of the overall sentence before parole eligibility, also requires the jury to make the required findings by proof beyond a reasonable doubt. Id. at 542-44, 766 A.2d 1126. As we said in State v. Watson, 346 N.J.Super. 521, 532-33, 788 A.2d 812 (App. Div.2002), certif. denied, 176 N.J. 278, 822 A.2d 608 (2003), the Johnson decision was based on statutory interpretation to avoid *871 a possible constitutional violation, were the United States Supreme Court to overrule McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), in light of Apprendi:
[Given Apprendi ] and recognizing that a parole ineligibility term could amount to more real time than an enhanced sentence, our Supreme Court understandably applied the rule of Apprendi to an ineligibility term required under NERA. State v. Johnson, 166 N.J. 523, 766 A.2d 1126 (2001). But Johnson so held as a matter of statutory interpretation. Id. at 540, 766 A.2d 1126. It did so because N.J.S.A. 2C:43-7.2e, which required a hearing prior to the imposition of a NERA sentence, simply requires that the NERA factor be established at a hearing after the defendant's conviction, without specifying either whether the hearing is before the judge or the jury, or the applicable standard of proof. Johnson, supra, 166 N.J. at 539-40, 766 A.2d 1126. Hence, the NERA statute was interpreted to avoid a constitutional defect in the event McMillan does not survive further scrutiny.
[State v. Watson, supra, 346 N.J.Super. at 532-33, 788 A.2d 812.]
McMillan upheld the power of a judge to impose a period of parole or minimum sentence as required by statute. McMillan, supra.
After Johnson was decided, the United States Supreme Court made clear that findings necessary for imposition of a minimum sentence, parole ineligibility or delayed parole eligibility are not controlled by Apprendi:

Apprendi said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crimeand thus the domain of the juryby those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding [a]s McMillan recognized, a statute may reserve this type of factual finding for the judge without violating the Constitution.
[Harris v. United States, 536 U.S. 545, 557, 122 S.Ct. 2406, 2414, 153 L.Ed.2d 524, 537-38 (2002).]
As the Court further stated:
Whether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any other sentence within the range without seeking further authorization from those juriesand without contradicting Apprendi.

[Harris, supra, 536 U.S. at 565, 122 S.Ct. at 2418, 153 L.Ed.2d at 543.][5]
*872 Following Harris, our Supreme Court recently revisited the Apprendi doctrine. In State v. Stanton, 176 N.J. 75, 820 A.2d 637, cert. denied, ___ U.S. ___, 124 S.Ct. 259, 157 L.Ed.2d 187 (2003), the Court held that the determination of whether a defendant had been intoxicated, as a basis for imposing a statutorily mandated parole ineligibility term for vehicular manslaughter, may be made by the trial judge rather than by the jury. 176 N.J. at 102, 820 A.2d 637. The majority rejected the proposition that Johnson requires a jury trial in cases not involving sentence enhancement:
We also disagree with the dissenters' reliance on this Court's decision in Johnson, to support their conclusion that a jury trial is required on all factual predicates for parole ineligibility terms. The reference in Johnson to the fact that a term of parole ineligibility is the `real time' was intended by the Court merely to strengthen the constitutional doubt holding by demonstrating the difference between an eighty-five percent NERA term and other parole disqualifiers that are generally capped at fifty percent of the base term. To the extent that Johnson can be read in any way to suggest that jury trials are required on sentence enhancement factors where there is no constitutional doubt, we disavow that suggestion.
[Id. at 90, 820 A.2d 637 (citations omitted).]
See also State v. Figueroa, 358 N.J.Super. 317, 321-25, 817 A.2d 982 (App.Div.2003) (Graves Act not subject to Apprendi in light of Harris).
Chapter 47 of the Code essentially requires the judge to determine whether the defendant is amenable to treatment as a sex offender and the location at which the offender will serve his or her term of incarceration. It also impacts on parole considerations, but it does not enhance or increase the sentence maximum, thereby requiring a jury finding of the prerequisites for sex offender treatment.
Finally, we note the recent opinion of this court in State v. Petrucci, 365 N.J.Super. 454, 839 A.2d 903 (App.Div.2004). In Petrucci, we held that under the rationale of Johnson and State v. Stanton, supra, the defendant was entitled to have a jury "make the factual findings required for imposition of a mandatory 100% parole ineligibility period under the assault firearms statute," N.J.S.A. 2C:43-6(g). State v. Petrucci, supra, 365 N.J.Super. at 462, 839 A.2d 903. The rationale included the fact that the ineligibility term under the assault firearm statute, similar to the ineligibility term under NERA but unlike the ineligibility term involved in Stanton, was higher than the parole ineligibility term otherwise authorized by law for the degree of crime involved, and that substantially more "real time" flowed from the 100% parole bar required for using an assault firearm during the commissions of an enumerated second-, third-or fourth-degree crime. Id., at 459-60, 839 A.2d 903. In fact, the mandatory parole ineligibility terms for second-, third-and fourth-degree crimes under the assault firearm statute equate to the required service of the complete maximum specific term sentences for those crimes. In contrast, the parole ineligibility term for first-degree crimes, for which N.J.S.A. 2C:43-6(g) requires a minimum parole ineligibility term of ten years, is only one-half of the maximum base term that can be imposed. Id., at 460, n. 2., 820 A.2d 637 Hence, under Petrucci, the jury finding must be made only with respect to second-, third-and fourth-degree crimes, but not a first-degree crime subject to N.J.S.A. 2C:43-6(g). Id.
Accepting the Petrucci conclusion that Stanton and Harris are distinguishable from Johnson and Petrucci, because of the *873 quantum of the ineligibility term required to be served, and that the Harris principle adopted and accepted by the majority in Stanton is not applicable when service of more than 50% of the sentence is required, Petrucci does not require a different result in this case. While a sex offender sentenced to Avenel may face different parole consequences than a defendant found guilty of the same crime and sentenced to general population without being found to come within the purview of the sex offender act, N.J.S.A. 2C:47-3d, -5, or not sentenced to Avenel because he or she is not amenable to, or is unwilling to participate in treatment, see N.J.S.A. 2C:47-3d, f, g, h, there is no mandatory ineligibility term greater than the time otherwise applicable for the crime of which defendant was convicted. Furthermore, a defendant sentenced to Avenel is technically eligible for parole upon recommendation of the special classification review board, unless a traditional parole ineligibility term, which can be no greater than one-half of the specific term sentence, is imposed. See N.J.S.A. 2C: 47-3b, c, h, -5a. See also State v. Chapman, 95 N.J. 582, 592-93, 472 A.2d 559 (1984); Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:47-3. Of course, the 2001 amendment to the No Early Release Act would govern cases affected by that amendment, including sexual assault. See N.J.S.A. 2C:43-7.2d.
There is another distinction between the case of a sex offender commitment under chapter 47 and cases like Johnson and Petrucci that involve more "real time" than one-half of the specific term sentence imposed. The fact findings that are a prerequisite to a sex offender commitment cannot be made until after defendant is convicted and the required Adult Diagnostic and Treatment Center evaluation is conducted. N.J.S.A. 2C:47-1, -2. However, if the Avenel evaluation concludes that defendant comes within the purview of the sex offender act, it is possible to require a new jury proceeding regarding the facts necessary for commitment under chapter 47, so we do not decide the issue before us on the basis of the jury's inability to make the required findings when returning its verdict.

III.
We reject defendant's contention that the State failed to establish that defendant's conduct was "characterized by a pattern of repetitive, compulsive behavior," as required by the Sex Offender Act. The State's expert, Dr. Mark Frank, a consultant at Avenel, indicated that defendant acknowledged he induced the seven-year old victim to commit fellatio more than once and, during the Avenel evaluation, told him "that even after the first incident he felt guilty and ashamed about what he had done after he put his penis into the child's mouth." According to Dr. Frank, "the thing[s] he was telling me were consistent with things he told the police, and they all point to strong feelings of guilt, shame, upsetment at the behavior that he didn't understand why he was committing," which he did "at least twice." Defendant's expert testified regarding defendant's statements to him, including why he admitted his guilt to the police and the judge, and his present claim that he did not commit the assaults. Dr. Franklin concluded that "[b]ased on the information available to me and the interview and testing, I can't conclude compulsiveness because [defendant] didn't even acknowledge that he engaged in the behavior."
There was more than sufficient evidence on the record, considering the greater "weight" given to the testimony of Dr. Frank, the State's expert, which was consistent with the other facts known in the *874 case, to sustain the finding "that in fact the defendant is repetitive compulsive and qualifies for sentencing at the Avenel Diagnostic Center." State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999); State v. Hass, 237 N.J.Super. 79, 81-86, 566 A.2d 1181 (Law Div.1988).
Accordingly, on the record made we find no basis for disturbing defendant's guilty plea or the sentence imposed. However, we remand for further proceedings addressed to defendant's motion to withdraw his guilty plea.
NOTES
[1] The offense occurred before June 29, 2001. In sentencing defendant, the judge stated that defendant was subject to "three years parole" supervision but that provision was not placed in the judgment.
[2] The written judgment does not include the finding that defendant was committed under the Sex Offender Act or to serve his sentence at Avenel.
[3] The post-Howard amendments to chapter 47 substantially affect the service of sentences for sexual offenses not served at Avenel. See N.J.S.A. 2C:47-3c, d, f, g, i. See also the 2001 amendment to the No Early Release Act, N.J.S.A. 2C:43-7.2.
[4] In discussing why "fundamental fairness demands that the trial court inform defendant" of the possible consequence of the SVPA, the Court noted that "[a] defendant who has committed a predicate offense may be faced with commitment under the Act for a period in excess of his or her sentence." Bellamy, supra, 178 N.J. at 138-39, 835 A.2d 1231.
[5] The quotations from Harris are from a portion of Justice Kennedy's opinion for four members of the Court, see the separate opinion of Justice O'Connor joining Justice Kennedy's opinion "in its entirety," 536 U.S. at 569, 122 S.Ct. at 2420, 153 L.Ed.2d at 545, and joined by Justice Breyer "to the extent that it holds that Apprendi does not apply to mandatory minimums," 536 U.S. at 570, 122 S.Ct. at 2421, 153 L.Ed.2d at 546.