**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2711-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ALEC P. DESANDO,

      Defendant-Appellant.

_____

Argued May 29, 2019 – Decided June 28, 2019

Before Judges Yannotti and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-02-0116.

Brian J. Neary argued the cause for appellant (Law Offices of Brian J. Neary, attorneys; Brian J. Neary and Jane Personette, of counsel and on the brief).

Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Jennifer Davenport, Acting Union County Prosecutor, attorney; Reana Garcia, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from an order of the Law Division dated January 8, 2018, which denied his petition for post-conviction relief (PCR) and his motion to withdraw his guilty plea. We affirm in part, reverse in part, and remand for an evidentiary hearing on the PCR petition.

I.

On November 18, 2013, M.D. was sitting in a parked Honda Accord in the parking lot of a 7-Eleven convenience store in Hillside.[1] She was waiting for her boyfriend to return from the store. Two men with guns approached M.D. and forced her to exit the vehicle and lie on the ground.

The men then entered the Honda and remained briefly before leaving the area. After the men drove away in the car, M.D. informed her boyfriend what had happened. They called 9-1-1, and the police arrived shortly thereafter. According to defendant, other than a scraped knee, M.D. did not suffer any physical injury.

The police located and followed the vehicle in Newark. The officers activated the emergency lights and siren on their vehicle. One of the officers stated that defendant was driving the car, but exited on the passenger side and

---

[1] We use initials to identify certain individuals to protect their privacy.

fled on foot. The officer observed defendant discard two handguns, one silver and one black. The police took defendant into custody and he provided a statement.

On February 20, 2014, a Union County grand jury charged defendant with first-degree carjacking, N.J.S.A. 2C:15-2 (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (counts two and three); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts four and five); third-degree eluding arrest, N.J.S.A. 2C:29-2(b) (count six); third-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count seven); and third-degree theft by unlawful taking, N.J.S.A. 2C:20-3 (count eight). On May 4, 2015, defendant pled guilty to first-degree carjacking.

On August 21, 2015, the trial court sentenced defendant to ten years of incarceration, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court dismissed the other charges. Thereafter, defendant filed a motion to modify his sentence pursuant to Rule 3:21-10. The court granted the motion and on January 7, 2016, filed an amended judgment of conviction (JOC), which reduced defendant's custodial term to nine years, with the eighty-five percent period of parole ineligibility under NERA.

On October 13, 2015, defendant filed an appeal, which was docketed as A-1212-15. He argued that the trial court erred by failing to impose a sentence in the second-degree range. After the trial court modified the sentence, defendant filed a notice of appeal from the amended JOC, which was docketed as A-4178-15. Defendant then filed a motion to consolidate the appeals. We denied the motion and dismissed the appeal under A-1212-15. Defendant then withdrew the appeal under A-4178-15, and that appeal was dismissed.

On July 20, 2017, defendant filed a verified petition for PCR and a motion to withdraw his guilty plea. Defendant claims he was denied the effective assistance of counsel. It appears that defendant was represented by two attorneys. In his petition, defendant asserts that in November 2013, he had just turned nineteen years old. He said he "was feeling depressed and desired to get high."

A friend from high school, whom defendant identified as Actor # 1, called and they arranged to get together. Defendant drove his mother's car to Actor # 1's home in Newark. Defendant claims he and Actor # 1 spent a few hours playing video games, getting high by smoking marijuana, and ingesting a drug called "Roxy," presumably Roxicodone, an opioid prescription painkiller.

4

Defendant asserts that "before the full effect [of the 'Roxy'] had taken hold, [he] decided to go home[,]" but Actor # 1 asked defendant to drive him to another person's home. Defendant states that after they traveled a short distance, his friend asked him to pull over so another man, whom defendant identified as Actor # 2, could enter the car. According to defendant, Actor # 2 was older and had "dreadlocks." Defendant claims he was "[c]onfused and under the increasing power of the 'Roxy.'"

Defendant asserts that he "felt greatly intimidated" by Actor # 2, who began to issue commands to defendant, "including the direction of travel." Actor # 2 then insisted that defendant allow him to drive the car, but defendant resisted. Defendant asserts that at Actor # 2's direction, he "stopped the car so that [Actor # 2] could go into a convenience store/bodega."

Defendant states that his fear of Actors # 1 and # 2 "skyrocketed" and his ability to think clearly grew "weaker by virtue of the chemical cocktail he had consumed earlier[.]" Actor # 2 returned to the car, and defendant claims he was "powerless" to resist Actor # 2's insistence on driving. He asserts Actor # 2 issued a "menacing threat."

According to defendant, Actor # 2 drove the car for hours and ignored his pleas to let him go home. Defendant claims Actor # 2 threatened him, "telling

5

him that if he did not 'shut up, you won't go home to your mother tonight.'" Defendant asserts he was unable to call or text anyone for help since "his phone battery had died." Defendant said he was "helpless and terrified."

Defendant claims that "[h]ours into this ordeal," Actor # 2 stopped outside a 7-Eleven, and engaged in a conversation about a Honda in the parking lot. Defendant asserts that Actor # 2 "took out a gun and handed it to Actor # 1, who turned the gun on" defendant and told him he had to go with him. Defendant says he refused but Actor # 1 insisted, telling him he did not have to do anything other than accompany him.

Defendant states that he "continued to refuse," and the other men became "more persistent and more threatening." Defendant was "terrified and traumatized[,] . . . in fear for his life, and still under the influence" of the narcotics. He took a cloth handed to him and put it over his face. He "also took the gun [that had been] forced upon him." He claims this was the only time he ever held or had been around a gun.

Actor # 1 reached the Honda first. Defendant claims he "wanted no part of this matter" but he was unable to run away because he was afraid of both Actor # 1 and Actor # 2, and he was unfamiliar with the "high crime area." Defendant observed Actor # 1 force a woman out of the passenger seat and onto

the ground. He told defendant to go through the woman's pockets, but defendant refused. Defendant claims he told the frightened woman she would not be harmed.

Actor # 1 entered the car on the driver's side, "apparently waiting for the driver to exit the store." Defendant asserts that he asked Actor # 1 if he could leave, but Actor # 1 refused. A short argument ensued, and Actor # 1 drove away at high speed. Defendant states that eventually, Actor # 1 "stopped the car and threw the guns" at him.

Defendant "unthinkingly took" the guns, "exited the passenger side of the car, and then discarded the guns," which the police later recovered. The police apprehended defendant, and Actor # 1 drove the Honda away. According to defendant, Actor # 1 was never pursued or apprehended. Actor # 2 also was not apprehended.

Defendant notes that he gave a statement to the police. He claims he was "still under the influence of drugs and traumatized by the events that had transpired[.]" He states that he gave the police "a different account" than the account set forth in his petition, "which included an incoherent and untrue statement that he had been walking for hours from Penn Station."

A-2711-17T2

Defendant alleges his attorneys were ineffective because they failed to pursue a duress defense. He claims he informed his attorney of the sequence of events detailed in his petition, and they filed a notice of defense based on duress. He alleges his attorneys "never supported nor adequately explored this defense."

Defendant also alleges he "repeatedly told his attorneys that he was high" when the police interrogated him, and the version of the events he provided the police was false. He claims he told his attorneys his "intoxication impaired his judgment throughout the entire ordeal, including during his interrogation." Defendant notes that his attorneys filed a motion to suppress his statement, but it appears counsel did not file a brief in support of that motion.

In addition, defendant claims he told his attorneys he wanted to speak to the police or persons in the Union County Prosecutor's Office to give "the full account of what actually transpired" on the night of the carjacking. Trial counsel allegedly "disregarded [defendant]'s wishes and discourage[d] him from providing . . . information" to the police or prosecutors. Defendant states that "in desperation" he reached out to law enforcement "through another channel," but one of his trial attorneys "rebuked" him for doing so.

Defendant further states that his trial attorneys did not share "his view of the case" and they were unwilling "to execute a strategy consistent with [his]

wishes and the evidence." He asserts that he wanted to adjourn the plea hearing so that he could speak with another attorney, but one of his attorneys refused his request.

Defendant claims he met with his attorneys to discuss the State's plea offer, which provided for a guilty plea to the first-degree carjacking offense, dismissal of the other charges, and a recommended sentence of twelve years, subject to NERA. His mother and father were present during the discussion. Defendant claims he repeatedly said he did not want to plead guilty. He states counsel focused on his potential exposure to a sentence longer than twelve years.

Defendant states that counsel's caution was appropriate, but "counsel failed to consider the significance of the duress" and intoxication defenses, and "the significance of the fact" that others were involved in the incident and they were never apprehended or indicted. Defendant claims he "yielded to his attorney[s] and openly sobbed" when he completed the plea forms.

Defendant also asserts that before sentencing, he told his trial attorneys he wanted to withdraw his guilty plea. His attorneys "declined to file the appropriate application[.]" He claims that under the applicable law, he was entitled to withdraw his plea.

The trial court heard oral argument on the applications, and thereafter filed a decision and order dated January 8, 2018, which denied defendant's PCR petition and the motion to withdraw the guilty plea. The court found that defendant had not established a prima facie case of ineffective assistance of counsel, and an evidentiary hearing was not required. The court also considered the factors enumerated in State v. Slater, 198 N.J. 145, 157-58 (2009), and decided that defendant should not be permitted to withdraw his plea. This appeal followed.

II.

On appeal, defendant argues the trial court erred by denying his PCR petition. He contends he established a prima facie case of ineffective assistance of counsel, and the court should have conducted an evidentiary hearing on the petition.

To establish ineffective assistance of counsel, a defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under the test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. Defendant must establish that counsel's performance "fell below an objective standard of reasonableness" and "that

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

Defendant also must show "that the deficient performance prejudiced the defense." Id. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. Id. at 694.

On appeal, defendant claims he was denied the effective assistance of counsel because his attorney failed to: (1) pursue a defense of duress; (2) litigate significant and viable issues under Miranda v. Arizona, 384 U.S. 436 (1966) and State v. Driver, 38 N.J. 223 (1962); (3) provide effective assistance during the plea-bargain stage of the proceedings; and (4) file a motion to permit him to withdraw his plea. He contends the PCR court erred by finding he did not establish a prima facie case of ineffective assistance of counsel.

Here, the PCR court found that defendant's trial attorneys made a valid strategic decision to recommend acceptance of the State's plea offer, rather than pursue the duress defense. The judge noted that to establish a duress defense under N.J.S.A. 2C:2-9(a), defendant had to show that "he was coerced" to

11

engage in criminal conduct "by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist." The judge also noted that N.J.S.A. 2C:2-9(b) provides that the defense is not available if the defendant "recklessly placed himself in a situation in which it was probable that he would be subjected to duress."

The judge found that even if defendant's version of the events was true, "his actions d[id] not meet the objective standard of reasonableness required for a successful duress" defense. The judge stated that the evidence showed defendant had the opportunity to flee from the scene, but he did not. The judge noted that carjacking is a serious offense, which weighed heavily against a finding that he acted in an objectively reasonable manner.

The judge also noted that even if the jury were to conclude that defendant's actions were objectively reasonable, defendant had other "hurdles to overcome" in establishing a duress defense. The judge pointed out that it could be argued that defendant recklessly placed himself in a situation where he would be subjected to duress by smoking marijuana and ingesting "Roxy," which impaired his cognitive ability. Moreover, defendant would be required to testify to establish this defense, and the State could confront defendant with his prior

statement to law enforcement officers, in which he provided what the judge described as "a completely different version of [the] events[.]"

The judge further commented that there was some indication in the record that defendant "would not have been an effective witness." The judge pointed out that at the hearing on his motion to reconsider the sentence, defendant delivered a rambling statement. The judge concluded that "trial counsel's decision to pursue a plea agreement instead of [an] affirmative defense of duress was a sound strategic decision[.]"

In addition, the judge found that trial counsel made a reasonable strategic decision to pursue a plea bargain rather than litigate Miranda and Driver motions. The judge stated that litigation of the motions created a risk that the State would change its plea offer and demand a lengthier prison term. The judge stated, "Recognizing this, trial counsel pursued a plea agreement instead of litigation."

The judge also rejected defendant's claim that his trial attorneys provided ineffective assistance during the plea-bargain process. The judge found that the record did not support defendant's claim that counsel refused to ask for an adjournment so that defendant could consult with another attorney and obtain a second opinion regarding the plea. The judge noted that there was no evidence

13

that defendant requested a second opinion before he entered his plea. Moreover, the record showed that his attorneys did, in fact, seek an adjournment, defendant had consulted with another attorney, and defendant obtained a second opinion before sentencing.

The judge also determined that the record did not support defendant's claim that his attorneys did not "advise him about the availability of [a] duress defense." The judge noted that when defendant was sentenced, he stated that at the time of the offense, he "did feel under duress" but understood he "did not have a legal defense" of duress. Defense counsel also told the court that defendant felt coerced, but he understood the coercion did not rise to the level of duress.

The judge further found that the record did not support defendant's claim that trial counsel "misadvised [him] about the likelihood of being sentenced [in] the middle-level range." The judge pointed out that defendant pled guilty to a first-degree offense, and the plea agreement called for a twelve-year prison term, which is on the lower-end of the range for first-degree offenses. The court initially sentenced defendant to a ten-year prison term, and later reduced that term to nine years.

The judge also rejected defendant's contention that his attorney "was ineffective because he recommended that [defendant] refrain from making statements to law enforcement[.]" The judge found that such advice was "more than competent." In addition, the judge rejected defendant's claim that his attorneys were ineffective because they did not file a motion to allow him to withdraw his plea. The judge found that such a motion would likely have been unsuccessful.

We are convinced that the record supports the judge's conclusions that defendant's trial attorneys were not ineffective in advising defendant about his sentencing exposure, recommending that defendant make no further comments to law enforcement, and by failing to file a motion to withdraw the plea. We are convinced, however, that the judge erred by concluding, based on this record, that counsel made a reasonable strategic choice to recommend acceptance of the State's plea offer rather than pursue a duress defense and litigate Miranda and Driver motions.

As noted, in his opinion, the judge pointed out a number of concerns counsel may have had with a duress defense. These concerns include evidence showing that defendant may have recklessly placed himself in a situation where he could be subject to duress by smoking marijuana and ingesting "Roxy,"

15

evidence showing that defendant had opportunities to flee the scene of the carjacking, and the need for defendant to testify at trial to support this defense. The judge found that counsel made a strategic decision to opt for a plea bargain, after having considered these and other factors, but counsel did not testify and there is nothing in the record to support the judge's finding.

We note that in evaluating a claim of ineffective assistance of counsel, the defendant must establish that his attorney's "representation fell below an objective standard of reasonableness." State v. Pierre, 223 N.J. 560, 578 (2015) (quoting Strickland, 466 U.S. at 688). Moreover, [a]n attorney is entitled to 'a strong presumption' that he or she provided reasonably effective assistance, and a 'defendant must overcome the presumption that' the attorney's decisions followed a sound strategic approach to the case." Id. at 578-79 (quoting Strickland, 466 U.S. at 689).

In determining whether counsel's representation was effective, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 578 (alteration in original) (quoting Strickland, 466 U.S. at 689). Furthermore, if an attorney investigates the relevant facts and law thoroughly, and "consider[s] all possible options," the attorney's "trial strategy is 'virtually unchallengeable.'"

16

State v. Savage, 120 N.J. 594, 617 (1990) (quoting Strickland, 466 U.S. at 690-91).

Here, the record lacked sufficient evidence for the PCR court to determine that counsel investigated the relevant facts and law thoroughly and considered all possible options before advising defendant to accept the State's plea offer. The court did not conduct an evidentiary hearing and, therefore, defense counsel provided no testimony regarding their representation of defendant, the plea negotiations, or the reasons they chose to recommend accepting the State's plea offer and forgo pursuit of a duress defense and the Miranda and Driver motions.

We therefore reverse the court's denial of defendant's petition and remand the matter for an evidentiary hearing on defendant's claim that his attorneys were ineffective in choosing to forgo pursuit of a duress defense and litigation of Miranda and Driver motions, and to recommend acceptance of the State's plea offer.

### III.

Next, defendant argues that the trial court erred by denying his motion to withdraw his plea. He contends that because of counsel's ineffectiveness, he did not enter his plea voluntarily, knowingly, or intelligently.

A-2711-17T2

Motions to withdraw guilty pleas are governed by Rule 3:21-1. After a defendant has been sentenced, he or she must demonstrate a "manifest injustice" to warrant a withdrawal. R. 3:21-1; see also Slater, 198 N.J. at 156.

"[T]he burden rests on the defendant to establish why the motion to withdraw his or her guilty plea should be granted." State v. Luckey, 366 N.J. Super. 79, 86 (App. Div. 2004). In making that determination, the court must consider and balance four factors: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 157-58.

Regarding the first factor, the judge found that defendant has a colorable claim of innocence. In his opinion, the judge noted that although defendant's defense was unlikely to be successful, defendant consistently maintained that he was under duress at the time of the carjacking.

The judge found, however, that defendant had not offered strong reasons for withdrawing the plea. The record shows that defendant was not misinformed about the plea agreement. Defendant was advised of the maximum possible sentence, and the court ultimately sentenced defendant to nine years of

18

incarceration, rather than the twelve-year prison term recommended under the plea agreement.

In addressing the third factor, the judge acknowledged that defendant's conviction was the result of a plea agreement. Finally, regarding the fourth factor, the judge found that the State would be prejudiced if required to try the matter because four years has passed since the crime. The judge therefore concluded that the motion should be denied.

On appeal, defendant argues that he satisfied the first and second Slater factors because he has consistently maintained he committed the carjacking under duress. He further argues that while the plea was entered pursuant to a plea agreement, that factor should have been given "the least weight" because plea bargains benefit both the State and defendant. He also argues that he established that the State would not be significantly prejudiced if he were allowed to withdraw his plea.

We are convinced, however, that there is sufficient credible evidence in the record to support the trial court's decision to deny the motion, and the court's decision was not a mistaken exercise of discretion. As noted, the judge found that defendant presented a colorable claim of innocence, but the other Slater factors predominated and warranted denial of the motion.

We note, however, that our conclusion that the court did not err by denying the motion to withdraw the plea does not preclude a finding on remand that defendant was denied the effective assistance of counsel when his attorneys elected to recommend acceptance of the State's plea offer in lieu of pursuing a duress defense and litigating the Miranda and Driver issues. As we have explained, that determination ultimately turns on whether counsel made a reasonable strategic decision to recommend acceptance of the plea agreement, which should be resolved after an evidentiary hearing.

Accordingly, we affirm the denial of defendant's motion to withdraw his plea, reverse the denial of defendant's PCR petition, and remand for an evidentiary hearing on the PCR petition in conformance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2711-17T2